New Orleans, Mobile & Texas Railroad Co. *v.* J. V. Toulmé.

1. Railroads. *Rate of speed. Statutory regulation. Killing animals.*
   Under Code 1880, § 1047, a railroad company is liable for damages for a horse killed by its locomotive running through a city at greater speed than six miles an hour, although the engine is checked when the animal is seen, and collides with less momentum.

2. Same. *Evidence. Eye-witnesses rebutted by circumstances.*
   If the plaintiff, without introducing an eye-witness of the killing, proves marks along the track where the horse was dragged by the engine, the jury may disbelieve the engineer and fireman, who testify that its leg was broken in a water-gap. *Chicago Railroad Co.* v. *Packwood, ante,* 280, distinguished.

Appeal from the Circuit Court of Hancock County.

Hon. J. S. Hamm, Judge.

The appellee sued the appellant for damages for killing his horse by negligence in running its locomotive through the

city of Bay St. Louis. Having shown that the animal escaped from the stable, and was found, after a passenger train passed, near the railroad track, with its leg broken and hoof torn off, and that marks of blood, with hair from its mane and tail, were along the track for more than twenty yards, the plaintiff proved that the animal, which was worth one hundred dollars, was killed by the railroad stock agent to relieve its suffering, and then rested. The defendant introduced the engineer and fireman, who testified that they saw the horse while the train was moving at twelve miles an hour, and at once blew the whistle, reversed the engine, put on the air brakes, and came nearly to a stop, when the horse jumped off in the dark and, getting his hoof caught in a water-gap, broke his leg. The defendant then rested, and the case was submitted to the jury, who returned a verdict for the plaintiff.

*Benjamin Deblieux*, for the appellant.

The accident happened and the damage was occasioned while the train was running within the permitted rate of six miles an hour, and every reasonable and proper precaution was taken to prevent a collision. There was no violation of the law at the time. The former illegal speed had ceased. That offence was among the things of the past, without resulting consequences. The penalty prescribed by Code 1880, § 1047, is, therefore, inapplicable to the facts of this case. There is a distinction between damages caused *during* the actual violation of the terms of the statute, and damages arising *after* the violation has ceased. The proof is insufficient to establish the liability for negligence in the discharge of the employees' duties under Code 1880, § 1054. *Memphis Railroad Co.* v. *Blakeney*, 43 Miss. 218; *Raiford* v. *Mississippi Central Railroad Co.*, 43 Miss. 233; *Memphis Railroad Co.* v. *Orr*, 43 Miss. 279. In these cases the judgments were reversed and remanded for a new trial. From a careful perusal of the opinions of the court, it is evident they so decided, not from the fact that the jury had erred in their verdict, but because a palpable and wilful injustice had been done through prejudice against corporations of this character. It is clear that this prejudice is still prevalent and on the increase, and is always made to be felt. This statute (Code 1880, § 1047) is,

however, inapplicable to live-stock, which should not be allowed at large in cities and on railroad tracks.   Its object was only to protect the lives and limbs of citizens within the village or city limits, by a positive, prohibitory, and penal statute.  · The Supreme Court held, in *Memphis Railroad Co.* v. *Blakeney*, 43 Miss. 218, that when both parties are equally at fault no damages should be allowed, unless voluntary and guilty negligence be shown.   That the plaintiff was in fault in disobeying the police regulations, and that the consequence of this fault might have been of the most serious character by throwing the locomotive from the track, and, possibly, the whole train down an embankment, is possible, as we know from actual occurrences of the kind ; and under these circumstances it is with bad grace and great injustice that the plaintiff should be allowed to recover damages for an act which he, by his own violation of law, caused to be brought about.   We may observe that it is no doubt necessary and right that railroad companies should be held to a strict observance of all such precautionary measures as law or custom may prescribe for the. prevention of accidents.   But justice and equity should govern the construction of penal statutes as well when applied to corporations, supposed to be without soul or body, as when applied to individuals.  A strange idea seems to prevail among the owners of stock along the line of this, and, perhaps, other roads, and evidently participated in by juries, that they should be held responsible for every injury done to their animals, without regard to the equities of the particular case.   And in almost every instance the case is made a mere speculation by demanding, and not unfrequently obtaining, a verdict for a value two or three times greater than that of the animal killed or injured.   With respect to such accidents, the court and jury are bound to consider as an important element in the investigation, independent of police regulations, the great disadvantages the company are under by the impossibility of protecting their track from the presence of stock moving at large.   The owners of stock know the danger necessarily resulting from passing trains, and if they allow their stock to run on the track they must take the consequences, even when there are no laws to prohibit their running at large.

All they can demand from the company is that they shall observe the ordinary precautions to prevent injury, and these consist in blowing the whistle and in slackening the speed of the engine.

*R. Seal,* on the same side.

No proof is made that the horse was injured by the locomotive. On the contrary, the circumstances are as consistent with the hypothesis that the injury resulted from the water-gap as with the theory that it was done by the engine, and two eye-witnesses swear to the former as the fact, while the latter is unsupported by direct evidence. The *prima facie* case required by the statute was not made out. But, if it was, the defendant proved the exercise of due care in the blowing of the whistle, reversing the engine, and putting on the brakes. No more can be required where a passenger train is unexpectedly confronted with a horse in the streets of a town or city. The owner, by his negligence in.permitting the animal to go upon the track, endangered the lives of the passengers and the company's engine and train, and cannot complain that the result was injurious to himself.

*Ben Lane Posey,* for the appellee.

Owners of horses are not required in this State to fence them, and, if they walk into town, are not guilty of negligence. Owners of locomotives are required by Code 1880, § 1047, to run them through cities at less than a certain rate of speed, and, if they exceed the limit, are guilty of negligence. Moreover, in this case, due care was not exercised. One second more, and this horse would have escaped. Had the train been running slower, or the brakes been sooner applied, the accident would not have happened. It cannot be held that the statute is inapplicable because the train collided at a lessened speed. Upon the question whether the engine or the water-gap did the injury, the evidence is conflicting, and the verdict of the jury, therefore, is conclusive. It is also correct, unless the horse deposited its mane and tail along the track before going to the water-gap to commit suicide.

CHALMERS, C. J., delivered the opinion of the court.

If the animal killed in this case was stricken by the train

of the railroad company at all (a question to be presently considered), it is admitted that it took place within the incorporated limits of the city of Bay St. Louis, and that instantly before the collision the train was moving at a greater rate of speed than six miles per hour. It is contended, however, that inasmuch as when the animal was observed the speed was instantly checked, so that at the moment of collision the rate of speed was less than six miles per hour, section 1047 of the Code of 1880, which makes railroad companies liable for all injuries to persons or property done by their trains " whilst they are running at a greater rate of speed than six miles an hour through any city or town," does not apply. The argument is that the rate of speed at the actual moment of collision was less than six miles, and that therefore the case does not fall within the statute. This position is not maintainable.

The object of the statute is to compel the companies to confine themselves to such speed within towns and cities that they can readily check their engines upon the sudden appearance of any obstruction. This object would be wholly defeated if the narrow construction contended for were placed upon the law. Railroad companies, in running their trains through incorporated towns, act at their peril in exceeding the speed prescribed, and are liable for all damage resulting from such excess of speed, whether it be done while such speed is maintained or by reason of it having been maintained it has become impossible to check the train in time to avoid collisions.

The defendant's witnesses testified that the horse injured was not struck by the locomotive at all, but received his injuries by running across the track in front of the engine and hanging his foot in a water-gap, by which his leg was broken without any collision with the engine. Though no eye-witness to the transaction was produced by the plaintiff, the jury were warranted in disbelieving the defendant's witnesses by the proof made that there were marks of the horse having been dragged along the track by the locomotive for twenty yards or more before the water-gap was reached. Herein the case of *Chicago Railroad Co.* v. *Packwood*, *ante*, 280, differs from this.

*Affirmed.*