## NELSON v. NEW ORLEANS & N. E. R. CO.

(Circuit Court of Appeals, Fifth Circuit. March 5, 1900.)

### No. 871.

1. CONTRIBUTORY NEGLIGENCE—WHEN A QUESTION OF LAW FOR THE COURT.

The question of negligence is one of law for the court only where the facts are such that all reasonable men must draw the same conclusions from them. A case should not be withdrawn from the jury unless the conclusion follows as matter of law that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish.

2. RAILROADS—INJURY TO PERSON ON TRACK—CONTRIBUTORY NEGLIGENCE.

Plaintiff's intestate was employed by defendant railroad company, and was engaged in mixing mortar, and carrying it to a new depot which was building. While crossing the main track of the road to the building with a bucket of mortar, he was struck by a passing train, and killed. The mortar box was placed across the main track from the building, and between that and a side track which extended to and beyond the beginning of a curve in the main track. At the time, the side track was filled with freight cars, which obstructed the view along the main track beyond a point about 330 feet from where the accident occurred; and there was also an engine standing on the side track, near the box, from which steam was escaping, making a considerable noise. Deceased did not see the train until he was crossing the track, when the engine was about 60 feet distant, and approaching at a speed of 40 miles an hour, and he was unable to get off the track at that point on the side next the building because of a pile of lumber which he was compelled to go around. The place was within an incorporated town, where the law of the state prohibited the running of trains at a higher rate of speed than six miles an hour, and it did not appear that the train gave any signals. *Held*, that under such circumstances it could not be said, as a matter of law, that the deceased was guilty of contributory negligence, but that such question was one for the jury.

In Error to the Circuit Court of the United States for the Southern District of Mississippi.

The plaintiff in error sued the defendant in error in the circuit court of Clarke county, Miss., for $10,000 as damages for causing the death of plaintiff's intestate, Joseph L. Nelson. On the application of the defendant the case was removed to the circuit court of the United States for the Southern district of Mississippi. In one of its counts the plaintiff's declaration averred: "That the New Orleans & Northeastern Railroad Company. the defendant, is. and was at the time of the infliction of the injuries hereinafter complained of, a corporation engaged in carrying freight and passengers to and from the city of Meridian, Mississippi, to the city of New Orleans, Louisiana, and that the railroad track of said defendant passes through the town of Pachuta, in the county of Clarke, and state of Mississippi. On or about the 12th day of September, A. D. 1893, the said Joseph L. Nelson was in said town of Pachuta, in said county and state, near the depot building in said town, when one of the defendant's south-bound passenger trains ran through said town, which is incorporated under the laws of the state of Mississippi, at the great and unlawful speed of forty miles per hour, and without any warning to the said Joseph L. Nelson, and without any fault or negligence on his part, and through the gross negligence and the willful and malicious wrong of the employés of defendant, who were at the time its agents, in charge of said train, ran over, mutilated, and fatally wounded the said Joseph L. Nelson, from the effects of which injuries and wounds the said Joseph L. Nelson died in about fifteen or twenty minutes thereafter; that by reason of the infliction of said wounds and injuries by the said defendant upon the said Joseph L. Nelson he suffered intense and indescribable mental and physical pain from the time of the infliction of the same up to the time of his death, all of which injuries, wounds, pain, and suffering were brought about and produced by the negligent, willful, and malicious conduct of the said employés of defendant and without any fault or negligence of the said Joseph L. Nelson." The defendant filed a plea of not guilty, and a plea alleging contributory negligence on the part of the deceased, Joseph L. Nelson. The case was tried on these pleas. It was proved that Joseph L. Nelson, plaintiff's intestate, was the husband of the plaintiff, and was an employé of the defendant, engaged in assisting in constructing a depot building for the defendant at Pachuta, Clarke county, Miss., at the time of receiving the injuries alleged in the declaration, which resulted in his death.

The plaintiff introduced Dr. L. S. Brownlee as a witness, who testified that:

"He was a practicing physician, residing at Pachuta, Clarke county, Mississippi, about 300 yards from the defendant's depot, and that he resided in said town on the 12th day of September, 1893. He saw Joseph L. Nelson on the 12th day of September, 1893. He was called to see him on the day that he died at Pachuta, in said Clarke county, Mississippi, at about 8:30 o'clock a. m. on said day. He was called to attend him in the capacity of a physician, and found him near the depot building in said town. He supposed it was about ten minutes after Joseph L. Nelson was struck by defendant's south-bound train before he reached his side. He found that his ribs were fractured, and that he was considerably bruised in the side and back and in other places. The said Joseph L. Nelson lived about one-half hour after the witness reached him, and he seemed to suffer intense pain. He was conscious for some time after the witness reached him, but did not recognize witness, or any one else, so far as witness knew. The south-bound passenger train on the New Orleans & Northeastern Railroad had gone south through Pachuta only a short time before witness reached Mr. Nelson. The south-bound passenger train was about two hours late, and reached Pachuta on that day about 8:30 o'clock a. m. The train ran through the town rapidly, but the witness could not tell how fast. Witness was well acquainted with the surroundings of the depot building and railroad tracks of the defendant company in the town of Pachuta, having lived in said town for many years past. The town of Pachuta was an incorporated town, and had a mayor and other town officers on the 12th day of September, 1893, the day Nelson was killed. The witness made and swore to the correctness of the following plat:

"The distances indicated on said plat were correct, the witness having made the measurements with a tapeline. A mortar box had been made between the main line of the defendant railroad and the side track of the railroad just west and opposite the depot building which was then being constructed. The side track of the railroad was and is west of the main track of said company, and the box in which mortar was being made up was situated between the main track and the side track west of the depot. The distance between the side track and the main track lying opposite the depot building was 10 feet and 5 inches. A spur track had been built by the defendant, running off from the main line just north of the depot building on the east side of the main track, as shown on the plat. From the mortar box and from the depot building on the opposite side of the main track to the point where the track on the main line began to curve northwestward it is 330 feet. At this distance of 330 feet from the mortar box and from the depot building the main line curved northwestward. This is a considerable curve. There were some cars standing on the side track west of the main line, which cars extended southward below the depot and northward some distance up the side track from the depot building and from the mortar box standing between the rails of the main line, and the said side track was covered by said cars. The said cars on said side track extended sufficiently north to obstruct the view of a person standing between the rails of the main line and the side track where the mortar box was situated, so that a person standing at or near said mortar box, or even on the main line and track between the mortar box and the depot building then being constructed, could not see a train coming from towards the north very far north of the curve in said main line or track. The distance between said mortar box and the point where the main line makes a curve is 330 feet, and a person standing at or near the mortar box could not see a train approaching from the north very far beyond this curve if the side track was filled up with cars. There was standing on the west side track, on the 12th of September, 1893 (the same day that Nelson was killed), a car load of lime and sand, which lime and sand were being used in the mortar box for making mortar to be used in the erection of chimneys and flues for said depot buildings. The lime and sand were taken out of the car and used by Nelson in making up mortar in the mortar box. There were also brick in the said car with said lime and sand, which brick were being used in the construction of the chimneys and flues for said depot building. Nelson made up the mortar in the mortar box, and carried the same across the main track to the building which was being constructed, and into the building, to be used about said flues and chimneys. Between the framework of the depot building and

the main track of the defendant company there was a pile of lumber 15 or 20 feet long and about 4 feet high, lying parallel with the main track, and this lumber extended from one end to the other of the depot building on the west side, and prevented a person from walking directly across from the mortar box to the depot building. A person coming from said mortar box to said depot building would be required to go either to the north end or to the south end of the building. He could not go directly across the main track, and reach said depot building, because he would be obstructed by said pile of lumber. He would be required to go northward from the mortar box about 10 or 15 feet, and then go east, to get around said pile of lumber to reach said building, or go diagonally across the main track, so as to cross north of the lumber pile. This lumber piled up between the depot building and the main track of the defendant company extended up to within a few feet of the east rail of the main track, which rail was so close to the west edge of the pile of lumber as to prevent a person from going between said east rail and the pile of lumber so as to be safe from an approaching train, the space between the pile of lumber and the east rail of the main track not being sufficient to prevent his being struck by an approaching train. At the time that Nelson was killed he was working for the defendant company. Pachuta at the time was a small town, containing 150 or 200 inhabitants. The most of the town is on the eastern side of the railroad tracks, and at some distance from the depot building; but there are some residences on the west side, several of them not very far from the depot. There is a railroad crossing for a public road to the north of the depot building about 210 feet, as indicated by said plat. The distance between the mortar box north to where the switch is located at the north end of the side track is 755 feet, as shown by said plat."

A. J. Vick, a witness for the plaintiff, testified that:

"On the 12th day of September, 1893, he was in the town of Pachuta, Mississippi. When Nelson was struck by the south-bound passenger train on the defendant's road, witness was standing on the rear platform of a car which stood on the spur track shown by the diagram, which spur track is on the east side of the main line of the defendant company, and runs back nearly to the depot building which was then being constructed. Witness was only a few yards from Nelson when he was struck by the train. Witness was standing on the steps on the west side of the car; that is to say, the steps nearest the main line of the defendant's railroad track. Nelson was injured by the south-bound passenger train of the defendant railroad company about 8:30 o'clock a. m. on September 12, 1893. The said south-bound train was behind time. Witness was looking at Nelson when he was struck by the train. Nelson had started with some mortar in a bucket or vessel which he held in his right hand, and which he had obtained from the mortar box shown on the diagram. He had started from the mortar box across the main track to the depot building, and was struck by the train about the time he was crossing the east rail of the main track near the north end of the depot building then being constructed. Witness did not hear the train blow, and Nelson did not see the train approaching him until it had gotten within sixty feet of him, and he did not have time to escape from the track after he saw it. When Nelson first saw the train, he had reached the main line, having his face looking northward in the direction from which the train was coming, and had started across the track in a northeasterly direction towards the north end of the depot building. Nelson could not have cleared the track by going directly east, because there was a pile of lumber lying between the depot building being constructed and the east rail of the track at that point, which would have prevented him from going directly across the main track. It was necessary for Nelson to go a little north, and then to the east, to escape the approaching train. Before Nelson was able to escape from the track, he was struck by the train, and afterwards died. He lived about 20 minutes after he was struck by the train. Witness assisted in picking Nelson up and taking him away after he was injured. Nelson was struck by fireman's side of the engine. Engineer could not see him at the time he was struck. About five minutes after Nelson was struck, and before the arrival of Dr. Brownlee, who had been sent for, Nelson said, 'Oh Lord!' twice. These were the only

words he heard Nelson speak. He seemed to suffer intense pain. His face and the movements of his body indicated much suffering. Witness left him, before he died, in the charge of the doctor. At the time Nelson was struck by the train, the train was running at the rate of 40 miles per hour, and did not lessen its speed. Near where it stopped after Nelson was struck there was standing on the side track west of the main line on that day, and at the time of the injury, a freight train, with an engine attached. On the north end of the train, and to the north of and adjoining the engine on said side track, a lot of box cars were standing, extending northward nearly to the point where the said side track runs into and joins the main track to the north of the depot. The said side track was covered with cars from the point at the mortar box extending along the said track to a point near the switch on the north, as shown by the diagram in evidence. For some distance below the depot, and south, the said side track was entirely covered with said freight train and box cars. A person standing between the side track and the main track near the mortar box could see an approaching train about 330 feet, but no further. A car standing on the side track would obstruct his view so that he could not possibly see any further, even if that far; but, if the cars had not been standing on the side track, he could, of course, have seen much further. The engine attached to the other train on the side track stood immediately west of and very near the mortar box. The engine was within a few feet of the mortar box, and only a few feet from Nelson. Before and at the time Nelson was struck by the train the engine attached to the other train which stood near the mortar box had on a high pressure of steam, and the escape of the steam from the engine made considerable noise. The escape of steam made a sort of thumping noise. The distance from the mortar box to the place where the side track joins the main line on the north is about 750 feet. The distance from the mortar box to where the main line makes considerable curve is about 330 feet. The side track also makes a curve at the same place where the main line makes a curve. The side track was entirely covered with cars from just opposite the mortar box to a point north near where the switch joins the main line. There were three railroad tracks in said town of Pachuta,—the main line, the side track west of the main line, and the spur track east of the main line, extending down nearly to the depot building. These three tracks are shown by the diagram. On this spur track were standing at the time three cars, one of which cars was being used for the depot while the depot building was being constructed; the defendant company had a telegraph office in said car, which was then being used as a depot car. Between the frame of the depot building then being constructed and the east rail of the main line there was a pile of lumber extending from the south end to the north end of the building, which pile of lumber was about 4 feet high, and covered the space between the west body of the depot building and the east rail of the main line up to within a foot or two of said east rail. This pile of lumber would prevent a person from going directly east from the mortar box across the main line to the depot building, and, in order to reach the depot building, he would have to go around the pile of lumber. A lot of hands were at work at that time on the depot, and Nelson was a day laborer in the employ of the defendant, assisting in the construction of said depot building. In a car standing on the side track just west of the mortar box there was some sand, lime, and brick, all of which were being used in the construction of said depot building. The sand and lime were being used by Nelson in the mortar box for the purpose of making mortar to be used in constructing the flues and chimneys to said building. Nelson would mix the lime and sand in said mortar box, and would then take the mortar in a bucket or vessel across the track to the depot building, for use. Nelson had not been in the employ of the defendant for a very long time, but the witness did not know how long. Witness did not know how long the mortar box had been constructed. He saw it there the day before Nelson was killed, but did not know how long it had been there before that time."

At the conclusion of the plaintiff's evidence the court, on motion of the defendant, instructed the jury to find a verdict for the defendant. The plaintiff duly excepted, and brings the case on error to this court, and assigns as error the instructions of the court to find for the defendant.

W. E. Baskin and D. W. Heidelberg (Mr. Miller, on the brief), for plaintiff in error.

John W. Fewell and Harry H. Hall (T. G. Fewell, on the brief), for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case, delivered the opinion of the court.

At the time the injury was inflicted which caused Nelson's death he was an employé of the defendant company, and was engaged in making and carrying mortar to build a depot. The injury was caused by other employés in charge of a locomotive and train on defendant's railroad. It is not necessary to consider the common law relating to fellow servants, because, so far as that question relates to this case, it is controlled by the Mississippi constitution and statute. Section 193 of the constitution of Mississippi of 1890 provides that:

"Every employé of any railroad corporation shall have the same right and remedies for any injury suffered by him from the act or omission of said corporation, or its employés, as are allowed by law to other persons not employés, * * * where the injury results from the negligence of a fellow servant engaged in another department of labor from that of the party injured, * * * or of one engaged about a different piece of work."

This provision of the constitution is repeated in the statute. Code Miss. 1892, § 3559. The employés having charge of the train of cars were engaged in another department of labor, and on a different piece of work, from that in which Nelson was engaged.

The evidence tended to show that defendant's locomotive attached to the train of cars ran over and killed the plaintiff's intestate at 8:30 a. m., on September 12, 1893. The accident occurred at Pachuta, Miss., which was an incorporated town of 150 to 200 inhabitants. The defendant was erecting a depot in that town, and "a lot of hands" were at work on it at the time of the injury. The plaintiff's intestate was engaged in making mortar in a mortar box situated between the railroad tracks, and in carrying the mortar across the main track to the depot. Lumber was so piled between the main track and the depot that he could not go straight across to the depot, but would be required to go northward 10 or 15 feet, and then eastward, to reach it. There was a curve in the railroad 330 feet from the mortar box, and a public crossing 210 feet from the mortar box. Several cars were so standing on the side track west of the main track as to obscure the view of the main track northward at a distance of 330 feet from the mortar box and from the track near it. An engine was on the west track, letting off steam, and making a thumping noise. The train was two hours later than the schedule time. Nelson started from the mortar box with a bucket of mortar to carry it to the depot for use in the building. When he was crossing the track, he first saw the train. It was running at the rate of 40 miles an hour. The statute prohibited under penalty the running of trains through an incorporated town faster than 6 miles an hour. Id. § 3546. No bell was rung, or other signal given. Nelson was within 60 feet of the train when he first saw it. The obstructions on the side track were

such that the train could not be seen till it was within about 330 feet of the mortar box. When Nelson first saw the train, he could not have cleared the track by going straight across, because just east of the track the lumber was piled so close that he could not get far enough from the track to escape the train. It was necessary to go a little north, and then east to clear the track. He was struck and killed as he reached the east side of the main track. This evidence unquestionably tended to show that the defendant company was guilty of negligence. Contributory negligence was the defense relied on in the court below and in this court. It is true, as decided in many cases, that one is guilty of contributory negligence if he recklessly walks on the railroad track in front of a rapidly moving train. If injured under such circumstances, he ordinarily has no right of action. Railroad Co. v. Houston, 95 U. S. 697, 702, 24 L. Ed. 542. In applying this doctrine in the case of Southern Pac. Co. v. Pool, 160 U. S. 438, 16 Sup. Ct. 338, 40 L. Ed. 485, the court said that the deceased, "on a bright morning, with nothing to obstruct his vision," started along the track. In a late case the same doctrine was expressed with much clearness. After holding that the deceased was guilty of contributory negligence in walking across the track in front of the moving train, and that the jury should have been directed in that case to find for the defendant, the court added:

"The cases in this court relied upon by the plaintiffs are all readily distinguishable, either by reason of the proximity of obstructions interfering with the view of approaching trains, confusion caused by trains approaching simultaneously from opposite directions, or other peculiar circumstances tending to mislead the injured party as to the existence of danger in crossing the track." Railroad Co. v. Freeman, 174 U. S. 379, 384, 19 Sup. Ct. 763, 765, 43 L. Ed. 1014, 1017.

This case indicates distinctly that, where there are obstructions interfering with the view of approaching trains, or other peculiar circumstances tending to mislead the injured party, the question of contributory negligence would at least be one for the jury. In the present case the obstructions on the railroad were such that the train could not be seen by Nelson till it was within 330 feet of him. If it was going at the rate of 40 miles an hour, it would go 330 feet in less than 6 seconds. Nelson did not see it till it was within 60 feet of him. That distance would be run by the train in about one second. Nelson was in the lawful performance of the work he was employed to do. The defendant was chargeable with notice of the conditions surrounding him. The conclusion does not follow from these facts, as matter of law, that Nelson was guilty of contributory negligence. The question of negligence is one of law for the court only where the facts are such that all reasonable men must draw the same conclusions from them. A case should not be withdrawn from the jury unless the conclusion follows as matter of law that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish. We do not discuss the evidence further, for we would not intimate what the verdict on the question of contributory negligence should be. We are of opinion that the evidence in the record makes it a question that should be submitted to the

100 F.—47

jury. Jones v. Railroad Co., 128 U. S. 443, 9 Sup. Ct. 118, 22 L. Ed. 478; Kane v. Railway Co., 128 U. S. 91, 9 Sup. Ct. 16, 32 L. Ed. 339; Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 678, 36 L. Ed. 485; Gardner v. Railroad Co., 150 U. S. 349, 14 Sup. Ct. 140, 37 L. Ed. 1107. The judgment of the circuit court is reversed, and the cause remanded, with instructions to grant a new trial.