TENNESSEE COAL, IRON & RY. CO. v. CURRIER.

(Circuit Court of Appeals, Fifth Circuit. April 16, 1901.)

No. 959.

1. PERSONAL INJURIES TO EMPLOYES—NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE—WITHDRAWAL OF CASE FROM JURY.

If, in an action by an employé for personal injuries, there is uncertainty, on all the evidence, as to the existence of negligence or contributory negligence, whether arising from a conflict of testimony, or because, the facts being undisputed, fair-minded men may honestly draw different conclusions therefrom, the case should not be withdrawn from the jury. Neither should it be withdrawn unless the conclusion follows, as a matter of law, that no recovery can be had on any view which can be properly taken of the facts which the evidence tends to establish.

2. SAME—SAFE APPLIANCES.

Evidence showed that plaintiff was employed by a mining company to drive a tram car used in carrying coal out of a mine. When first employed, the boss driver went one trip with him, and he was instructed to sit on the car and drive as other drivers did. At a low place in the mine

he had to stoop to pass under, bending forward with his face close to his knees. After he had been at work for several weeks he was knocked off when riding as usual on a new car sent in by the company, and in use for the first time. Until then he did not notice that it was higher than the other cars, and unsafe to use in the same way. *Held*, that the company's negligence in failing to furnish him with a proper car was properly submitted to the jury.

**8. SAME.**

The evidence, besides, tended to show that it was necessary to ride, so as to furnish the mule light. The mule drew two cars; the high one, on which plaintiff was riding, according to custom, being in front. Moreover, it tended to show that the driveway was so obstructed that he could not have walked beside the car, and that it was impracticable for him to walk and perform his work. *Held* that, conceding that he knew that the car was higher than the others in use, he had a right to assume that its use was not dangerous, and that there was no error in a refusal to instruct that he was guilty of contributory negligence.

In Error to the Circuit Court of the United States for the Northern District of Alabama.

This action was brought by J. D. Currier, the defendant in error, against the Tennessee Coal, Iron & Railway Company, a corporation under the laws of Tennessee, the plaintiff in error, in the circuit court of Jefferson county, Ala., and was duly removed to the United States circuit court for the Southern division of the Northern district of Alabama. It is an action for damages on account of personal injuries received by Currier through the alleged negligence of the company. Currier was an employé of the company, engaged as a laborer in the coal mines. The negligence complained of was that there was a low place in the roof of the mines where Currier was at work for the company, and that he was furnished with a car too high to admit of his safe passage under the low place in the roof, and that in attempting to ride the car under the low place, as he and other employés had been accustomed to ride other cars used in the mines, he was knocked off and seriously injured. There are several counts in the complaint. Some of them are framed under the employer's liability act, and some of them are framed to charge the company as at common law. The Alabama statute, on which some of the counts are framed, is as follows: "1749 (2950). Liability of master or employer to servant or employé for injuries. When a personal injury is received by a servant or employé in the service or business of the master or employer, the master or employer is liable to answer in damages to such servant or employé, as if he were a stranger, and not engaged in such service or employment, in the cases following: (1) When the injury is caused by reason of any defect in the condition of the ways, works, machinery, or plant connected with, or used in the business of the master or employer. (2) When the injury is caused by reason of the negligence of any person in the service or employment of the master or employer, who has any superintendence intrusted to him, whilst in the exercise of such superintendence. (3) When such injury is caused by reason of the negligence of any person in the service or employment of the master or employer, to whose orders or directions the servant or employe, at the time of the injury, was bound to conform, and did conform, if such injuries resulted from his having so conformed. (4) When such injury is caused by reason of the act or omission of any person in the service or employment of the master or employer; done or made in obedience to the rules and regulations or by-laws of the master or employer, or in obedience to particular instructions given by any person delegated with the authority of the master or employer in that behalf. (5) When such injury is caused by reason of the negligence of any person in the service or employment of the master or employer, who has the charge or control of any signal, points, locomotive, engine, switch, car, or train upon a railway, or any part of the track of a railway. But the master or employer is not liable under this section, if the servant or employé knew of the defect or negligence causing the injury, and failed in a reasonable time to give information thereof to

the master or employer, or to some person superior to himself engaged in the service or employment of the master or employer, unless he was aware that the master or employer, or such superior already knew of such defect or negligence; nor is the master or employer liable under subdivision 1, unless the defect therein mentioned arose from, or had not been discovered or remedied owing to the negligence of the master or employer, or of some person in the service of the master or employer, and intrusted by him with the duty of seeing that the ways, works, machinery, or plant, were in proper condition." Code Ala. 1896, § 1749.

The company filed four pleas. The first plea was a general denial of the allegations of the complaint. The other three pleas each alleged that Currier was guilty of contributory negligence, in this: (1) That he was negligently and improperly, or in an improper or negligent manner, riding on the car, or trip of cars, at the time of his injury, and was thereby injured; (2) that he knew of the defect or negligence complained of in each of said counts separately and severally, and after acquiring such knowledge continued in defendant's service after the expiration of a reasonable time for the remedy thereof, and was thereby injured; and (3) that he failed to get off the car on which he was riding at the time of his injury before he reached the low place at which he was injured, as it was his duty to do.

The plaintiff offered evidence tending to prove: That in July, 1898, he was an employé of the defendant company, which was engaged in operating coal mines at Pratt City, Ala. That in its business the defendant had tram cars pulled by a mule, and the plaintiff was driving the mule, carrying the tram cars loaded with coal from the entry to the deposit place at the slope. That Greenhill, an employé of the company, and the boss driver, made the first trip with the plaintiff, and ever after that the plaintiff rode the car just as Greenhill had done. That on the 19th of July, 1898, while plaintiff was engaged about his work, he was furnished a tram car four or five inches higher than the other cars which plaintiff had been handling. That this was a new car, and plaintiff did not know that it was higher than the other cars, and he did not discover the difference until after he was dragged off and injured by the overhanging rock at the low place. That at the time the plaintiff was hurt he was riding on top of the car in the same way that he had been riding the other cars, and in just the same way the superintendent, Greenhill, showed him how to ride the first day he went to work there as a driver. It was usual and customary for the driver to rake the coal back (which the plaintiff had done in this instance), and to sit on the front of the car, and he was required to sit in this position, and, when the low place was reached, to lean his body forward over his lap. It was pitch-dark in the mines, and it was necessary for the driver to sit in front, so as to throw the light ahead from the lamp on his cap. It was not customary for the driver to get down when passing the low place in the roof. The plaintiff testified: That he could have gotten off before reaching the low place, but it was somewhat dangerous to do so, as he was liable to get caught by the walls in raising up, and he could not pass by the mule then, as it would have been necessary for him to do to give light for the mule, and he would have had to walk in the water. That he knew there was some difference in the height of the cars, but, to use his own language, "I had ridden on all those cars in the mines, and hadn't been caught before, and I thought there was room for me to pass on any car in the mines;" and he had been riding cars in the same way every day for about three months. The high car from which he was thrown was a new car, and he had not been warned as to its height, nor did he know it. He further testified: "If I got off before I came to that low place, I would, as a matter of fact, have to be either behind that car, or between the loaded cars and empties. If I had not had the light of my lamp, which was on my cap in front, I would not have had any other light. My light was necessary for the work that was to be done in front of them. If I had been behind the trip with my light, it would have been of no value to the mule or any one else. The light threw out its rays only a little distance. I can't say how far. The light was for my benefit, to see how to do the work, and for the mule to see how to travel. For the benefit of myself and for the mule I should have been on the front of my trip in going out from the entry to the deposit place.

That is where the drivers ride. * * * The danger I was guarding against at that time was keeping the mule off the slope, and from getting run over by the trip on the slope. * * * The car I was on was three or four inches higher than the one behind it, judging from the way they looked to me after I was hurt. * * * If 'it had been my business, and I had taken special notice, I suppose I could have seen that one car' was higher than the other before I was hurt. A man with a lamp light would detect it. Yes; after the accident I had nothing but a lamp light, and I detected it because I was hurt, and they were stopped there, and I had nothing else to do but notice them. They were not stopped when I hitched the mule to them. They were stopped when I coupled them together. They were stopped before I was hurt. I knew 'there was some little difference in the height of the cars used in that mine. There were about two hundred cars in the mines, all together. * * * Up to this time I had no difficulty in passing with any of them that I had used. I did not know the great difference that was in this car on which I was hurt. * * * It was not my duty to examine the cars, but to drive them. I was never instructed to examine the height of the cars, or by the rules required to do anything of the kind. At the low place in between the empties and the loads, if I got in behind the mule, the light on my cap would have given the light to the mule, but you can't get off the car, for the danger to yourself and to the mule, also. You couldn't get in front of the mule in time to keep him off the slope. Greenhill [the boss driver] rode on the front of the car when he was showing me, all the way through; rode under the low rock. Greenhill told me to take care of the mule, and not let her get hurt. I couldn't get off on the right-hand side without danger. There was a rock that hung over and so close to the track just as I crossed the new slope, and after I got on the side track there was water, and I could not have gotten ahead of the mule. I would have been behind the mule if I had gotten off before I reached the low place. When the mule got to the low place she turned to the right, between the two tracks, and that let her out from under the low place, and if I had gotten off on that side I would have been right behind her; and she filled the space between the loaded and the empty tracks, and I couldn't get by her, and besides, it would have had a tendency to turn her on the slope. * * * I wanted to keep the mule off the slope, to keep her from being killed by the cars coming down from the engine, which let the cars down. They came down fast, without anybody on them, and are liable to come at any time. I had no way to pull back. She had no reins. In going to the point where the low rock was, it was downhill, and there was no way for the mule to hold back. She had to trot along to keep out of the way of the car." There was other testimony offered by the plaintiff tending to show that one Meagher, the bank boss, employed the plaintiff, and that he had charge of all the men and all the machinery in the mines. Evidence was offered by the defendant conflicting in many respects with the foregoing statements. The questions of negligence on the part of the defendant and of contributory negligence on the part of the plaintiff were submitted to the jury. The jury found a verdict for the plaintiff for $1,500, on which judgment was entered. The company sued out this writ of error to reverse the judgment. Several errors are assigned, which raise the questions considered in the opinion.

W. I. Grubb (Walker Percy, on the brief), for plaintiff in error.
A. O. Lane and F. S. White, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The contentions of the plaintiff in error, when analyzed, are, in effect, that the trial court should have instructed the jury to find for the company, because (1) the facts proved did not show negligence on the part of the company; and (2) that, if the company was negligent, the defendant was guilty of contributory negligence. In

examining these propositions we must remember that if there is uncertainty, on all the evidence, as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and is to be settled by the jury; and this is true whether the uncertainty arises from a conflict of testimony, or because, the facts being undisputed, fair-minded men may honestly draw different conclusions from them. A case should not be withdrawn from the jury unless the conclusion follows, as matter of law, that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish. Railroad Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745; Nelson v. Railroad Co., 40 C. C. A. 673, 100 Fed. 731.

The plaintiff, Currier, was at work in the coal mines of the company. He, of course, assumed the apparent risks and dangers incident to his employment. But it is clearly the duty of the employer to use reasonable care to see that the appliances, implements, and cars furnished the employé with which to work are safe and fit for the purposes for which they are intended. Railway Co. v. Archibald, 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188; Railway Co. v. Murray, 42 C. C. A. 334, 102 Fed. 264. The evidence shows that Currier was employed to drive a tram car used in carrying coal out of the mine. When first employed, the boss driver went one trip with him. He was instructed to sit on the car and drive. There was a low place in the mine, where the driver had to stoop to pass under. He had to bend forward, with his face close to his knees. In this way he passed under safely. Currier drove in this way for several weeks. Other drivers were accustomed to drive in the same way. The company, through its agent or superintendent, furnished the cars and sent them to the slope where Currier was at work. On the 19th of July, 1898, after Currier had been at work several weeks, while driving under the low place, riding and stooping in the usual way, he was knocked off the car by the rock forming the roof of the mine. It was immediately apparent that the car on which he was riding (a new car sent in for use that day for the first time) was higher than the other cars. It was so high, in fact, that a driver sitting and stooping on it could not safely pass under the low place. The company had knowledge, or was chargeable with knowledge, of the condition and construction of its tram cars, and whether or not they were so constructed that they could be safely used in the mines. These facts, we think, to say the least, so tended to show negligence on the part of the company as to make the question proper to be submitted to the jury. Railway Co. v. Eckman, 42 C. C. A. 344, 102 Fed. 274.

Was the plaintiff so clearly guilty of contributory negligence as to make it improper to submit the case to the jury? It is true that he knew of the sloping or low place in the mine. He knew of the difficulties in passing under it with the cars in use. It is urged that by ordinary observation he could have seen that the car on which he was hurt was higher than the others. The evidence, or at least part of it, tended to show that it was necessary for him to ride on the car, so as to furnish the mule light from his lamp attached to his cap. The mule was drawing two cars, the high one being in

front. He was following the custom of riding on the front car. There was evidence tending to show that the driveway was so obstructed at the sides that he could not have walked at the side of the car. There was much evidence tending to show that it was not practicable to walk and perform the duties imposed on him. But, aside from this, granting that he could tell that the new car was higher than the others in use, and that he did discover the fact, we think that he had the right to assume that, although it was higher than the others, it was not so high as to make its use dangerous. The employé may assume that the employer observes reasonable care in selecting the appliances furnished. We do not think that the learned judge in the trial court erred in refusing to instruct the jury, as matter of law, that the plaintiff was guilty of contributory negligence. The judgment of the circuit court is affirmed.