## HEMINGWAY v. ILLINOIS CENT. R. CO.

(Circuit Court of Appeals, Fifth Circuit. April 22, 1902.)

### No. 1,103.

1. CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF—RULE IN FEDERAL COURTS.

Where, in an action to recover for negligence resulting in death, the defendant claims contributory negligence, it is the rule of the United States courts, irrespective of the decisions in the courts of the state where the federal courts are held, that the burden is on defendant to show that the deceased was negligent and that his negligence contributed to the injury which resulted in his death.

2. SAME—WHEN QUESTION OF LAW.

Where, in an action to recover for personal injury, all the material facts touching the negligence of the person injured are undisputed, and admit of no rational inference but that of his negligence, the question of contributory negligence becomes matter of law only, and the court should direct a verdict.

3. SAME—WHEN QUESTION FOR THE JURY.

Where, in an action to recover for personal injury, the negligence of defendant is shown, and there is conflict in the material evidence as to whether the person injured observed ordinary care, or, where there is no such conflict, the facts are such that reasonable men might fairly draw different conclusions from them, the question of contributory negligence is for the jury.

4. RAILROADS—NEGLIGENCE—PERSONAL INJURY—CONTRIBUTORY NEGLIGENCE—EVIDENCE—QUESTION FOR JURY.

Plaintiff sued to recover for the death of his minor son, caused by the negligence of a railroad company. The accident occurred about dark at a street crossing in a village. The street approaching the crossing was for 100 yards in a cut 4 or 5 feet deep, and the railroad for 300 yards was on a curve, and in a cut 8 or 10 feet deep, with shrubs, a fence, and house between the street and track. The train was running 35 or 40 miles an hour, in violation of Laws Miss. 1896, p. 76, which prohibited a greater speed than 6 miles an hour through a city,

town or village. The evidence was conflicting as to whether the whistle was blown or bell rung continuously for 300 yards before reaching the crossing, as required by Ann. Code Miss. § 3547. Deceased, who was driving a team attached to a loaded wagon, in which were two other men, slowed to a walk as he approached the track. One of those men testified that he looked and listened all the way along for a train, and was facing the direction from which it came; that he was the first to see it, and as soon as he saw it he called out, and jumped from the wagon, and just as he struck the ground the engine struck the wagon. There was testimony that one approaching the track could not see a locomotive headlight coming from that direction until he was within 6 feet of the track and the engine was within 150 yards. The negligence of defendant was conceded, but the court directed a verdict for defendant on the ground of contributory negligence of deceased. *Held*, that the question should have been submitted to the jury.

Pardee, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern District of Mississippi.

Wm. C. McLean, for plaintiff in error.

Edward Mayes (J. B. Harris and J. M. Dickenson, on the brief), for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This is an action for $11,100 damages, brought by Prince Hemingway, a citizen of the state of Mississippi, against the Illinois Central Railroad Company, a corporation chartered under the laws of the state of Illinois. The action is based on the alleged wrongful and negligent act of the defendant in causing the death of Frank Hemingway, the infant son of the plaintiff. Such right of action is given to parents for the death of the minor child, caused by the wrongful or negligent act of another, by the law of the state of Mississippi, where it is alleged that the wrong was committed. Laws Miss. 1898, p. 82, c. 65. By a law of that state approved March 18, 1896, all railroad companies having the right of way are allowed to run locomotives and cars through cities, towns, and villages at the rate of six miles an hour, and no more; and it is provided that "the company shall be liable for any damages or injury which may be sustained by any one from such locomotive or cars whilst they are running at a greater speed than six miles an hour through any city, town or village." Laws Miss. 1896, p. 76. By another statute each locomotive engine is required to be provided with a bell and a steam whistle, which can be heard distinctly at a distance of 300 yards; and it is provided that the company "shall cause the bell to be rung or the whistle to be blown at the distance of at least three hundred yards from the place where the railroad crosses over any highway or street; and the bell shall be kept ringing, or the whistle shall be kept blowing, until the engine have (has) stopped or crosses the highway or street." Ann. Code Miss. § 3547. The declaration charges that the defendant was running the engine and train in violation of these statutes, and that Frank Hemingway was killed by its train at a public crossing in the town of Como, Miss. The defendant pleaded: (1) That it was not guilty of the supposed wrongs and injuries charged; and (2) that

Frank Hemingway was guilty of contributory negligence, in that he failed to exercise ordinary care and prudence in going upon the railroad track without stopping the wagon, and without looking or listening for the approaching train, which he could have seen and heard, and that he thereby contributed to his own injury and death. Issue was joined, and the case tried on these pleas. After evidence had been offered by both the plaintiff and defendant, counsel for the defendant moved the court to instruct the jury to find a verdict for the defendant. The trial court granted this motion, instructing the jury to return a verdict for the defendant, to which action of the court the plaintiff duly excepted. A verdict was returned for the defendant, and a judgment entered thereon, and the case is brought to this court by the plaintiff on a writ of error. It is assigned here that the circuit court erred in directing a verdict for the defendant.

The facts may be briefly stated: On the 31st of March, 1900, Frank Hemingway, 18 years of age, while attempting to cross defendant's railway track, was run over and killed by a train controlled by defendant's servants. The accident occurred about dark, at a public crossing in the corporate limits of the town of Como, Miss. The highway or street on which the deceased was driving a wagon runs east and west, and crosses the railway which runs north and south. The train which killed deceased came from the south. Beginning south of the crossing, the railway curves eastwardly. For about 300 yards south of the crossing the track runs through a cut 8 or 10 feet deep. The street east of the crossing, for about 100 yards, is in a cut four or five feet deep. A traveler on the highway from the east, as he approached the crossing, would have between him and a train coming from the south some shrubs, a fence, and a house, and the train would be in the cut on the track when within 300 feet of the crossing, and the traveler in the cut in the highway. Such were the natural features of the place where the accident occurred. Frank Hemingway was standing up in the wagon, and driving. Heywood Robinson and John Davis were sitting in the wagon, one facing the rear of the wagon and one facing south. The wagon approached the crossing, the mules going in a trot. It had in it two "iron-toothed harrows, two baskets of clothes, a barrel of flour, and some meat, sugar, and coffee." As the wagon neared the crossing, "it slowed up to a walk," but did not stop. One of the occupants of the wagon, before nearing the crossing, said, "I reckon it is about train time," and deceased said "he didn't reckon it was, but didn't know exactly what time the train came." John Davis, who was sitting with his face towards the south, testified that his face was in the direction the train was coming from; that, as the wagon approached the crossing, he looked and listened for the train "all the way along," and also "just before he got there." The train approached the crossing through the cut at the rate of "35 or 40 miles an hour." As to whether the whistle was blown and the bell rung as the crossing was approached there is conflict in the evidence. Travis Taylor, who examined the crossing before testifying, said that a traveler must get within "about 6 feet" of the railroad before he could see an approaching train; that, after getting within 6 feet of the track, he could see

the headlight of an approaching engine "about 150 yards." John Davis was the first to see the train. "I was the first to see it. I said, 'Lord, there comes the train!' and about the time I said that I jumped out. * * * About the time I hit the ground the train struck the wagon." Heywood Robinson also jumped out, and was not hurt. The wagon was smashed, the mules killed, and Frank Hemingway so injured that he died in a few hours. It is conceded that the defendant was guilty of negligence in running its trains through an incorporated town at a speed forbidden by the statute. Railroad Co. v. Toulme, 59 Miss. 284; Nelson v. Railroad Co., 40 C. C. A. 673, 100 Fed. 731.

The controlling question in the case is: Does the evidence show such contributory negligence on the part of the deceased as left nothing to be passed on by the jury, but required the court to instruct them as matter of law that the plaintiff could not recover? The burden of proof is on the defendant to show that the deceased was negligent, and that his negligence contributed to the injury which resulted in his death. Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270; Railroad Co. v. Volk, 151 U. S. 73, 77, 14 Sup. Ct. 239, 38 L. Ed. 78; Hough v. Railroad Co., 100 U. S. 213, 225, 25 L. Ed. 612; Railroad Co. v. Harmon's Adm'r, 147 U. S. 581, 13 Sup. Ct. 557, 37 L. Ed. 284. This rule governs in the United States courts, irrespective of the decisions in courts of the state where the federal courts are held. 2 Fost. Fed. Prac. (3d Ed.) p. 880, § 375. In the absence of all evidence on the subject, it would not be presumed that the deceased did not exercise proper care, for he had the greatest incentive to caution to protect his own life. Improvement Co. v. Stead, 95 U. S. 161 (4), 24 L. Ed. 403. But the defendant can, of course, avail itself of the evidence offered by the plaintiff as tending to show the contributory negligence of the deceased. Railroad Co. v. Horst, 93 U. S. 291 (9), 23 L. Ed. 898. But on all the evidence the rule of the federal courts is that the burden of proof is on the defendant to sustain by a preponderance of evidence its defensive plea of contributory negligence. Railroad Co. v. Mares, 123 U. S. 710, 8 Sup. Ct. 321, 31 L. Ed. 296; Beach, Contrib. Neg. § 426. In judging the deceased's conduct and considering whether it was prudent or negligent, it must be estimated in the light of all the circumstances surrounding him, and in view of what he had the right to expect of others. He is not blamable if the injury has resulted from the act of another, which he could not reasonably have anticipated. Railroad Co. v. Van Steinburg, 17 Mich. 99, 119. It would not be negligence in the deceased to act on the assumption that the defendant would not run its trains in violation of the state law. Hasie v. Railway Co., 78 Miss. 413, 414, 28 South. 941. A railroad crossing a highway or street on the same level imposes duties both on the railroad company and the traveler on the highway. The train necessarily has the preference and right of way. It is required to give reasonable notice or warning of its approach, so that a wagon in the road near the crossing may wait for it to pass. What is reasonable and timely notice, if not fixed by statute, may depend on the speed of

the train and other circumstances of the particular case. One who is crossing the track must exercise diligence and ordinary care to ascertain whether a train is approaching and to avoid a collision. The track itself is a notice and warning to exercise such care. He is not required to exercise the greatest diligence or care, but only such as a prudent man would exercise under the circumstances of the case. He is not required, as matter of law, to stop before crossing the track, but his omission to do so is a fact to be submitted with the other facts to the jury. He is required to exercise such diligence and care as an ordinarily prudent man would exercise under the circumstances. Improvement Co. v. Stead, 95 U. S. 161, 24 L. Ed. 403; Judson v. Railroad Co., 158 N. Y. 597, 53 N. E. 514. In Railroad Co. v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014, the court held that the peremptory instruction for the defendant should have been given. There the train that caused the injury was going at a rate not exceeding 20 miles an hour. At a distance of 40 feet from the crossing the approaching train could be seen 300 feet away. The deceased drove onto the railroad track in a slow trot, without changing gait. His eyesight and hearing were good, and there was nothing to impede his sight. He drove onto the track looking straight ahead. As he approached the crossing "the train was in full view." The court was of opinion that the testimony tending to show contributory negligence on the part of the deceased was so conclusive that nothing remained for the jury, and that the defendant was entitled to an instruction to return a verdict in its favor. But the court referred to a class of cases readily distinguishable "either by reason of the proximity of obstructions interfering with the view of approaching trains, confusion caused by trains approaching simultaneously from opposite directions, or other peculiar circumstances tending to mislead the injured party as to the existence of danger in crossing the track." In Railroad Co. v. Griffith, 159 U. S. 603, 16 Sup. Ct. 105, 40 L. Ed. 274, the court held that the question of the plaintiff's contributory negligence was properly left to the jury. An important fact leading to that decision was that the highway on which she was driving proceeding towards the crossing passed into "a cut, and then there was no view of the railroad whatever to the south on account of the highway being cut down and the growing corn on that side." In Nelson v. Railroad Co., 40 C. C. A. 673, 100 Fed. 731, Nelson was killed while crossing the track to carry mortar to a depot that was building. The court held that the question of Nelson's negligence was for the jury, it having been proved that a car on the side track obstructed the view of the approaching train, and that there was noise of escaping steam from a nearby engine, so that the sound of the train probably could not be heard. In that case the court laid stress on the fact that Nelson could not see the train because of a curve in the track, till it was within 330 feet of him; saying that, "if it was going at the rate of 40 miles an hour, it would go 330 feet in less than 6 seconds." In Jones v. Railroad Co., 128 U. S. 443, 9 Sup. Ct. 118, 32 L. Ed. 478, the plaintiff walked out of the depot by the usual way, and was struck by a passing train be-

tween the wall of the depot and the platform. The circuit court directed a verdict for the defendant. The case was reversed on error, because the evidence tended to show that a car on the side track obstructed the plaintiff's view of the approaching train, and, although he had listened, there was so much noise about the place of exit from the depot that the sound of the advancing train could not be distinguished.

To review the many cases on this subject would serve no useful purpose. They make it clear that, if all the material facts touching the alleged negligence of the person injured be undisputed, and admit of no rational inference but that of negligence, the question of contributory negligence becomes matter of law only, and the court should direct the verdict. Such is the case when one possessed of hearing and sight walks or rides on a railroad track before a rapidly approaching train, when there is nothing to impede his sight or hearing. In such case it may be assumed that he did not look, or, if he looked, he did not heed the warning, but recklessly took his chance of crossing before the train could reach him. Railroad Co. v. Houston, 95 U. S. 697, 24 L. Ed. 542; Railroad Co. v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014. But when there is conflict in the material evidence relating to the alleged negligence of the person injured, or when there is no conflict, but the facts are such that reasonable men might fairly draw different conclusions from them, the question is one for the jury. Such is the case when one walks or drives along the highway and across a railroad and is injured, and, the negligence of the railroad company being shown, there is conflict in the material evidence as to whether the person injured observed ordinary care in crossing; or, where there is no conflict in the evidence, the facts are such that different conclusions might be fairly drawn from them as to whether the person injured showed a want of ordinary care, or did what a reasonably prudent man ought to have done under the circumstances. Railroad Co. v. Griffith, 159 U. S. 603, 16 Sup. Ct. 105, 40 L. Ed. 274; Railroad Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485. The difficulty in cases of negligent injuries is that it seldom happens the injuries are inflicted under the same circumstances, and therefore no common standard of conduct by prudent men under all circumstances can become fixed and known. And no rule of law can be formulated to apply to all cases. Said Mr. Justice Lamar, speaking for the court, in Railroad Co. v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679, 682, 36 L. Ed. 485:

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under the different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such

that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury."

When a judge decides as a matter of law that a plaintiff has been guilty of contributory negligence, he necessarily fixes in his own mind the standard of ordinary prudence, and, measuring the plaintiff's conduct by that, turns him out of court upon what is his opinion of what a reasonably prudent man ought to have done under the circumstances. He thus makes his own opinion of what would be generally regarded as prudence a definite rule of law. If the same question of prudence were submitted to a jury collected from the different occupations of society, and perhaps better competent to judge of the question of ordinary care, he might find them differing with him as to the ordinary standard. The question of negligence is usually one of fact for the jury, but, unquestionably, cases do occur in which it is the duty of the judge to direct the verdict. It is not possible to lay down a rule that will designate all such cases. While the principles are well settled, the application of them to particular cases causes much difference of judicial opinion.

There is evidence in the record which tends to show that the accident occurred after dark, and at a public crossing; that there were obstructions between the deceased and the approaching train; that the train was running at from 35 to 40 miles an hour in a town where the statute forbade it to be run faster than 6 miles an hour; that the whistle was not blown nor the bell rung as required by statute; and that the occupants of the wagon looked and listened, not stopping, but that they approached the crossing slowly. On this state of facts we must hold that the court erred in directing a verdict for the defendant.

Other questions were discussed at the bar and in the briefs, upon which we express no opinion, as they may not arise on the next trial on the same or similar pleadings and evidence.

The judgment of the circuit court is reversed and the cause remanded for a new trial. Judgment reversed.

PARDEE, Circuit Judge, dissents.