GUSTAV EISSING v. ERIE RAILROAD COMPANY.

Argued February 26, 27, 1906—Decided June 11, 1906.

Where, in a suit for damages for injury resulting from a collision at a railroad crossing, there is submitted on the one side positive evidence, by credible witnesses, that the statutory provision with regard to the ringing of a bell upon the engine as the train approached the crossing had been fully complied with, and on the other side there is nothing, except the testimony of two witnesses, each of whom was more than a mile away from the crossing at the time of the accident, that they did not hear the bell ring, and of a third witness who was near the crossing, but whose attention was entirely concentrated upon the impending accident, that he did not hear the bell ring, but could not say that it did not ring, it is improper to leave to the jury the determination of the question whether the statutory signal was given.

On error to Hudson Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justice HENDRICKSON.

For the plaintiff in error, *Gilbert Collins.*

For the defendant in error, *Warren Dixon.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.   The plaintiff is a stock farmer near the village of Secaucus, in Hudson county.   On a certain day in the month of September, 1903, he sent his hired man, Joseph Burglie, with a wagon and team of horses, to the city of New York for a load of swill.   On his return from the city a little after nine o'clock in the evening, Burglie, while driving across the defendant company's railroad tracks, was run down by one of its trains and killed.   The wagon in which he was riding was demolished and the team of horses seriously injured.   This suit is brought by the plaintiff, as the owner of the horses and wagon, to recover for the damages sustained by him.

The ground upon which the defendant company's liability was rested in the declaration was the failure of the engineer to discharge the duty imposed upon the company by the statute of giving warning of the approach of its train to the crossing by blowing a whistle at frequent intervals, or ringing a bell continuously for nine hundred feet before reaching the crossing.   To prove this failure of duty, three witnesses were called on behalf of the plaintiff, two of whom were himself and wife.   He testified that he heard a whistle blown just before the crash of the collision, but that he heard no bell rung.   His wife testified that she also heard a whistle blown just before the collision, and that she heard a bell after it occurred, but that she heard no bell before the collision.   At the time of the accident they were, each of them, at their own home, which, according to the testimony of the plaintiff himself, was two thousand yards, or more than a mile and an eighth, away from the crossing.   Viewing the facts as to location in the most favorable light for the plaintiff, the point at which the defendant company was required by the statute to begin the blowing of its whistle or the ringing of its bell was therefore at least seventeen hundred yards (or only sixty yards less than a mile) away from his house.   It would have been most strange if, at that distance, they had heard it, even if they had been listening for

it, which they do not claim they were doing. The mere fact that a person who is practically a mile away from the point where a railroad company is required to begin ringing a bell does not hear the bell ringing upon a train when it reaches that point, or afterward, when the train is constantly moving further and further away from him, is no evidence whatever of the non-ringing of the bell, without proof that its sound can be heard at that distance by the person if he listens for it.

Nor is the statement of Mrs. Eissing, that she heard a bell ringing after the accident, although not before, proof that the bell upon the engine which collided with the plaintiff's wagon and team was not being rung in compliance with the statutory requirement. Accepting her story as true, the natural presumption is that the bell she heard was either not an engine bell at all, or else was a bell upon an engine which was much nearer to her home than the crossing at which the accident occurred.

The third witness called by the plaintiff to prove the failure of the defendant company to perform its statutory duty was one Jacob Dunkirk. At the time of the accident he was looking out of the window of a house which was located about fifty feet from the crossing. He saw both the train and the wagon and team of the plaintiff as each was approaching the crossing, and he also saw the collision. On his direct examination his testimony on the subject of the ringing of the bell was as follows:

"*Q.* Did he [the engineer] ring any bell?

"*A.* I could not swear to that.

"*Q.* Did you hear any bell?

"*A.* I couldn't tell you that.

"*Q.* I say, did you hear any?

"*A.* No, I didn't hear any, and I couldn't swear if he did ring the bell; he was—— [witness interrupted].

"*Q.* Never mind that; did you hear any bell?

"*A.* No, I didn't hear any."

On his cross-examination, being asked this question, "When you were in the same window, lots of trains go by and you don't hear the bell?" he answered, "That night I couldn't

swear if they did ring the bell or not." Even in the absence of proof that the bell was rung, the testimony of this witness would hardly justify the conclusion that it was not. True, he was so situated that he could have heard it (if it was being rung), provided he was listening for the sound of it, but his statement that he could not swear whether it was rung or not shows very clearly that his attention was entirely taken up with the impending accident which he saw was about to occur, and that he gave no thought and paid no heed to whether or not the bell was ringing.

If the trial judge, in this state of the proofs upon the question of the defendant company's negligence, had refused to permit the plaintiff to go to the jury, we should have hesitated to say that his action was not justified. He did not take that course, however, but required the defendant to proceed with its case. It thereupon called as witnesses the engineer and fireman of the train, who were on the engine; the baggage master, who was in the car next to the engine; one of the brakemen, who was in the front of the second car; another employe of the company—not one of the train crew— who was riding on the train to his home, and also one of the passengers upon the train, who was sitting in the car next to the engine, and each of these witnesses testified that the bell was ringing continuously while the train was passing over the nine hundred feet to the crossing. Still another witness, a man who was standing on the platform of the railroad station, some distance beyond the crossing, waiting for this train, testified to having heard the bell ring, although he did not fix the locality where it was being rung with exactness. As against this positive affirmative evidence of witnesses, all of whom, except the engineer, and perhaps the fireman, seem to have been disinterested, there should have been something more than the testimony of two witnesses who were, presumably, too far away from the scene of the collision to have heard the sound of the bell, even if they had been listening for it, that they did not hear it ring, and the testimony of a third witness, who was not listening for it, that he did not hear it, but could not say whether it was ringing or not, to justify

the submission of the question to the jury. *Hubbard* v. *B. & A. R. R. Co.*, 159 *Mass.* 320; *Culhane* v. *New York Central, &c., Railroad Co.*, 60 *N. Y.* 133; *Keiser* v. *Lehigh Valley Railroad Co.* (*Pa. Sup. Ct.*), 61 *Atl. Rep.* 903.

At the close of the case, defendant's counsel moved the direction of a verdict in its favor upon the ground that no negligence on its part had been shown. The motion was refused by the trial judge, and error is assigned upon that refusal. The motion should have prevailed. Its refusal was error.

The judgment under review must be reversed.