JOHN BLAUVELT, DEFENDANT, v. ERIE RAILROAD COM-
PANY, PROSECUTOR.

Argued November 1, 1910—Decided February 27, 1911.

1. Where proof of the negligence of a railway in failing to blow a
   highway crossing signal (*Pamph. L.* 1903, *p.* 663) consisted
   solely in the testimony of a witness who said that he did not
   hear it, coupled with a statement that on account of a strong
   wind one could scarcely hear any sound, and there being positive
   testimony of both engineer and fireman that the whistle was
   blown—*Held*, that there was no conflict of evidence requiring
   the submission of that fact to the jury.
2. *Held*, under the facts of the case, that the plaintiff was guilty
   of contributory negligence.

On *certiorari* to Common Pleas.

Before Justices GARRISON, SWAYZE and VOORHEES.

For the prosecutor, *Collins & Corbin*.

For the plaintiff, *Joshua R. Salmon* and *Elmer King*.

The opinion of the court was delivered by

VOORHEES, J. This writ of *certiorari* has removed for re-
view a judgment entered for the plaintiff on the verdict of a
jury, in the Court of Common Pleas, on appeal from the
Small Cause Court. The litigation was brought to recover
damages for injuries to property received at a grade railway
crossing.

The alleged negligence of the defendant was the failure to
give the statutory signals by bell or whistle.

The statutory requirements (*Pamph. L.* 1903, *p.* 663) are
in the alternative, either that the bell shall be rung or the
whistle blown, not cumulative requiring both to be done.
*New York, &c., Railroad Co.* v. *Leaman*, 25 *Vroom* 202.

If, therefore, the plaintiff failed to prove that both signals
were omitted, he has failed in his proof. The proof that the

crossing signal by whistle was given was the subject of the positive testimony of both engineer and fireman. The plaintiff's evidence is, "I did not hear any bell or whistle. There was a very strong wind that morning from the west, that blew the sound away from me." And, on cross-examination, he repeated: "Yes there was a strong wind blowing." "Q. So that would confuse any sound? A. Yes, you could not hear any sound scarcely."

This constitutes the whole testimony concerning the giving the statutory signals by whistle. The plaintiff's testimony in rebuttal refers alone to the warning whistle just before the collision, not to that prescribed by statute.

Undoubtedly, the condition of the wind described by the plaintiff made it unlikely that he could have heard the whistle had it blown. There was, therefore, no conflict of evidence requiring the submission of that fact to the jury. *Eissing* v. *Erie,* 44 *Vroom* 343; *Holmes* v. *Pennsylvania Railroad,* 45 *Id.* 469; *Weiss* v. *Central Railroad,* 47 *Id.* 348; *Howe* v. *Northern Railroad,* 49 *Id.* 683.

The motion to direct a verdict for the defendant should have prevailed on this ground.

But assuming that the defendant's negligence in the failure to give the statutory signals by bell or whistle was sufficiently made out to carry the case to the jury, yet we think the proof clearly exhibits the concurring negligence of the plaintiff but for which the accident would not have occurred.

The plaintiff approached the crossing with the nature and surroundings of which he was familiar, in the daylight, driving a horse and buggy, in which he rode, with its top up and side curtains down. The horse was going at a slow walk of three miles per hour. While sitting in the buggy he was unable to see on either side much more than ten or fifteen feet of the track. In order to see out at the side he had to lean forward. When he came to a point, which he places at twenty or thirty feet from the track, he got up off the seat and looked around the top and did not see any train, and then went on. He did not get off his seat again, but just looked around the top. There was a strong wind which blew the sound

away from him. When he arose and looked he could not see further than the freight house about two hundred or three hundred feet up the track. Unless he raised from his seat and leaned forward, he could see but a little ways—"about ten or fifteen feet maybe." He did that but once, and did not look again, but "kept his eye that way," but could see only about ten or twelve feet. The plaintiff stated that he was "very famililar with the location of all trees, buildings and anything that might tend to obstruct the view of the track in approaching the crossing."

It was admitted that a clear view of two thousand feet was obtainable at points in the highway, distant one hundred, seventy-five and fifty feet from the crossing; at forty feet from the crossing the view is limited to two hundred feet, but again at twenty feet and thence to the tracks the view is unobstructed for two thousand feet.

With the familiarity possessed by the plaintiff of the surroundings, it is apparent that by looking only at a point where he had but a three hundred feet of view, and failing to look before reaching that point, or after passing it, where he might have obtained a two thousand feet of view, he did not exercise that care which devolves upon a prudent man in approaching a dangerous place. After he had made an observation and found his vision obstructed, it became his duty to be cautious. *Central Railroad* v. *Smalley, 32 Vroom* 277, 279. His driving upon the track at a slow walk without thereafter attempting further to look effectively with knowledge that a clear view might have been thereafter obtained, while yet in a place of safety, condemns him as contributing to the accident.

The judgment will be reversed that a *venire de novo* may be awarded.