THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS
RAILWAY COMPANY v. STARKS, ADMINISTRATRIX.

[No. 7,908.   Filed November 6, 1914.   Rehearing denied January
29, 1915.   Transfer denied March 26, 1915.]

1. RAILROADS.— *Crossing Accidents.— Complaint.— Sufficiency.—* A
complaint to recover for the death of plaintiff's decedent, who was
struck by a train at a street crossing, specifically averring facts to
the effect that buildings, trees, shrubbery, etc., together with a cut
in the right of way and a curved track obstructed both the view
of, and the noise made by, an approaching train, and that decedent
was free from contributory negligence, and charging negligence by
defendant in that, with full knowledge of the conditions, it care-
lessly and negligently operated its train running late, over the
crossing and against decedent, who was riding in a buggy, at a
speed exceeding sixty miles per hour, etc., states a cause of action.
p. 345.

2. RAILROADS.—*Crossing Accidents.—Wilful Injury.—Complaint.—
Sufficiency.—*A complaint on the theory of a wilful injury to plain-
tiff's decedent who was struck by defendant's train at a grade
crossing, which charged the operation of the train, at the rate of
sixty miles per hour, and that the engineer, seeing and fully com-
prehending decedent's perilous position, purposely, wilfully and
without regard to decedent's rights, ran the locomotive upon and
against decedent's buggy, etc., was sufficient without an averment
that defendant or its servants intended to cause the injury sus-
tained by decedent.   p. 346.

3. APPEAL.—*Waiver of Error.—Failure to Present Question on Re-
trial.—Waiver on Subsequent Appeal.—*Where alleged error in
overruling a demurrer to a paragraph of complaint was waived on
a former appeal by failure to point out any objection, and the
question of the sufficiency of such paragraph was not submitted to
the trial court on retrial of the cause following reversal, such
waiver extends to the appeal from the judgment rendered at such
retrial.   p. 347.

4. RAILROADS.—*Crossing Accidents.—Contributory Negligence in
Approaching Crossing.—Jury Question.—Instructions.—*The mere
fact that a traveler approaches a railroad crossing in a buggy,
with his view obstructed by side curtains and a storm front, does
not render him guilty of contributory negligence as a matter of
law or of fact, if he exercises the care commensurate with his
situation, but in such case the question is for the jury if the
evidence upon the subject of care is contradictory or reasonably
susceptible of more than one inference; hence there was no error

in the refusal of instructions to the effect that if plaintiff's decedent approached the crossing so enclosed in his buggy that he could not see the approaching train in time to avoid injury, but could have seen it if he had not so obstructed his view, he was guilty of contributory negligence as a matter of law. (*Cleveland, etc., R. Co.* v. *Pace* [1913], 179 Ind. 415, distinguished.) pp. 348, 363.

5.   RAILROADS.—*Crossing Accidents.—Wilful Injury.—Evidence.*— To sustain a charge of wilful injury to plaintiff's decedent who was struck by defendant's train at a grade crossing, plaintiff had the burden of showing that decedent was in a position of imminent peril and unconscious thereof, or unable to extricate himself therefrom, and that defendant's engineer had knowledge of such facts, and had the power and opportunity of avoiding the collision, but intentionally omitted to do so, and with such knowledge, power and opportunity, wilfully ran the train over the crossing in utter disregard of the consequences; hence where plaintiff's evidence merely showed negligence, and the uncontradicted testimony of defendant's engineer, who was the only person who saw the accident, showed that he relied upon his belief that decedent would stop and that, after discovering that decedent was continuing to approach the crossing, he did all that could be done to avoid the injury, a charge of wilful injury was not made out. p. 350.

6.   RAILROADS. — *Crossing Accidents. —Evidence. — Findings.*—Evidence that when decedent left his home on a cold day in February, his buggy was not enclosed by side curtains with which it was equipped, and that the curtains had never been "fastened", affords no proof that the buggy was thus unenclosed at the time decedent was struck by a train some four miles from his home, and, since a verdict for plaintiff necessarily found that decedent was free from contributory negligence, thereby finding against the enclosed condition of the buggy to the extent that same tended to the establishment of contributory negligence, it must be deemed in support of the verdict that the jury in considering the uncontradicted testimony of defendant's engineer to the effect that the buggy was enclosed by curtains at the time of the accident, applied the usual and proper tests to determine his credibility and the weight to be given his testimony, and, not being satisfied, rejected his testimony upon that point to the extent that it was out of harmony with the general verdict, which, in view of all the evidence, it had a right to do. pp. 352, 354, 356, 360, 362.

7.   EVIDENCE.—*Sufficiency to Warrant Inference.—Question of Law.* —As to whether the testimony of plaintiff that at the time decedent left home the buggy in which he rode was not closed with

Cleveland, etc., R. Co. *v.* Starks—58 Ind. App. 341.

side curtains, together with the surrounding and intervening facts and circumstances including the element of time, was sufficient to render legitimate the drawing of an inference that the buggy was or was not closed at the time decedent was struck by a train some four miles from his home, is a question of law, though the determination of what inference should be drawn from evidence, if any is permissible, is within the province of the jury.    p. 354.

8. EVIDENCE.—*Weight of Evidence.—Proof by Inference.*—In the process of proof by inference, there must first be established a fact or collection of circumstantial facts bearing some relation to the fact to be proven, and if the court can not say as a matter of law that the existence of such relation is not reasonably probable, no inferences can be drawn from the facts or circumstances thus established.    p. 356.

9. EVIDENCE.—*Presumptions.—Continuance of Status or Condition.* —Where it is shown that a condition or fact apparently continuous or permanent in nature exists at a particular time, an inference arises that it existed at a subsequent time, within reasonable limits, but there is no presumption of the continuance of a given state of things where the quality of permanency does not exist. p. 356.

10. EVIDENCE.—*Proof.—Inferences.*—While an inferred fact may become the basis of another inferred fact, the first of the line of inferences must be based upon a proven or known fact.    p. 361.

11. RAILROADS. — *Crossing Accidents. — Evidence. — Verdict.—Review.*—In an action for the death of plaintiff's decedent who was struck by a train at a grade crossing, a general verdict for plaintiff included a finding that decedent was not guilty of contributory negligence, and the court on appeal in determining whether decedent was guilty of contributory negligence, will consider such inferences in support of the verdict as the jury may have reasonably indulged from the evidence, while as against the verdict it will consider only such inferences or presumptions as necessarily are gathered from the evidence.    p. 364.

12. NEGLIGENCE.—*Contributory Negligence.—Evidence.*—Either the presence or the absence of contributory negligence may be shown, by either direct or circumstantial evidence, or both, aided by inferences legitimately drawn from facts and circumstances proven.    p. 365.

13. RAILROADS.—*Crossing Accidents.—Contributory Negligence. — Failure to Stop.*—Though the failure of a traveler who was injured on a railroad crossing to look and listen before going upon the crossing would be sufficient to convict him of contributory negligence, the mere fact that he failed to stop within a space of

thirty or forty feet from the track is not sufficient of itself to show contributory negligence as a matter of law.     p. 367.

14. RAILROADS.—*Crossing Accidents.—Contributory Negligence.— Jury Question.*—In an action for the death of a person struck by a train at a grade crossing, where there was some direct evidence that decedent did not stop within thirty or forty feet from the crossing, but no evidence to show whether he did or did not stop at any other point, or whether he did or did not look and listen or take other precautions to detect the approach of a train, and there were no facts or circumstances detailed compelling an inference that he could have detected the approach of a train by the exercise of due care, the question of whether decedent was guilty of contributory negligence was for the jury.     pp. 367, 368.

15. RAILROADS.—*Crossing Accidents.—Contributory Negligence.— Presumptions.*—When a traveler upon a highway approaches a railroad intersecting such highway at grade, under circumstances as that by the exercise of reasonable care, he can see and hear the approach of a train in time to avoid injury, the law will presume, in case he is injured or killed, either that he did not look and listen or that he did not heed what he saw and heard.     p. 367.

16. DEATH.—*Presumption of Due Care.—Instinct of Self-Preservation.*—The presumption of due care based on the instinct of self-preservation does not obtain in this State.     p. 370.

From Ripley Circuit Court; *F. M. Thompson,* Judge.

Action by Mary A. Starks, administratrix of the estate of Francis Starks, deceased, against The Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*John A. Cravens, T. S. Cravens, L. J. Hackney* and *F. L. Littleton,* for appellant.

*Thomas L. Creath, J. K. Ewing* and *Frank Hamilton,* for appellee.

CALDWELL, J.—This is the second appeal in this case. In an appeal taken from a former judgment rendered in favor of appellee, the judgment was reversed on an erroneous instruction, and a new trial ordered. *Cleveland, etc., R. Co. v. Starks* (1910), 174 Ind. 345, 92 N. E. 54. On the second trial, appellee again recovered judgment, from which this

appeal is taken. The cause was submitted to the jury on issues of fact formed by a general denial to the second, third and fourth paragraphs of complaint charging appellant with negligently causing the death of appellee's intestate, and a fifth paragraph charging appellant with wilfully causing the death of said intestate.

Prior to the first appeal, the court overruled demurrers addressed to each paragraph of the complaint. Errors are separately assigned on the overruling of appellant's demurrers to the fourth and fifth paragraphs, and on the overruling of appellant's motion for a new trial.

Briefly stated, the facts are in part as follows: On February 14, 1906, Francis Starks, appellee's intestate, seated in a buggy drawn by one horse, drove south along Mulberry Street in the town of Batesville, Ripley County, Indiana, and entered on appellant's track where it crosses the street at grade, and was thereupon killed by a passenger train from the east, which collided with his buggy. The intestate left surviving him certain minor children and also his widow, the appellee, who, as administratrix, brings this suit. The further facts will appear in the course of the opinion.

The second paragraph of complaint charges that the death of the decedent was negligently caused by appellant's failure to give the statutory signals or other warning of the train's approach to the crossing. The third paragraph contains the same charge of negligence as the second paragraph and, in addition, a general charge of negligence in operating the train, resulting in decedent's death. On the first appeal, the Supreme Court expressly held the second and third paragraphs sufficient. The fourth paragraph also was

1. held sufficient as against all objections urged against it. Generally stated, it is now argued that said paragraph does not include a sufficient charge of negligence. By said paragraph, facts descriptive of the nature of the crossing are specifically averred, to the effect that buildings,

trees, shrubbery, etc., a cut in the right of way and a curved track obstructed both the view of and the noise made by a train approaching from the east. It is alleged that Batesville contained about 2,500 inhabitants, and that Mulberry Street crossing was situated in a very populous neighborhood, and that said crossing was being used continuously and extensively by persons both on foot and in vehicles. Facts are specifically alleged to the effect that decedent was not guilty of contributory negligence in approaching and entering on the crossing. It is not alleged that decedent was unacquainted with the crossing, or that the statutory crossing signals were omitted. The negligence charged is to the effect that appellant, with full knowledge of the obstructed nature of the crossing, and of the effect of the obstructions, and of the other facts pleaded, carelessly and negligently operated its train, running late, toward and over the crossing, and against the decedent who was riding in a buggy, at a speed exceeding 60 miles per hour, and thereby killed decedent. In our judgment, considering the rate of speed, in connection with the nature of the crossing and appellant's alleged knowledge of the facts, the paragraph states a cause of action. Without further discussion, we cite the following: *Chicago, etc., R. Co.* v. *Spilker* (1893), 134 Ind. 380, 33 N. E. 280, 34 N. E. 218; *Terre Haute, etc., R. Co.* v. *Clark* (1880), 73 Ind. 168; *Louisville, etc., R. Co.* v. *Stommel* (1890), 126 Ind. 35, 25 N. E. 863; *Brooks* v. *Muncie, etc., Traction Co.* (1911), 176 Ind. 298, 306, 95 N. E. 1006; 33 Cyc. 971, 972; *Lake Shore, etc., R. Co.* v. *Barnes* (1906), 3 L. R. A. (N. S.) 778, note.

The theory of the fifth paragraph of complaint is that the injury was wilfully inflicted. It is argued that this paragraph is insufficient by reason of the absence of an averment that appellant or its servants intended to cause the injury sustained by decedent, or intended to collide with him. It is averred in this paragraph that when appellant's train was 400 feet east of the cross-

ing, the engineer in charge thereof saw the decedent in a buggy drawn by one horse, approaching and entering on the crossing; that the engineer did nothing to warn decedent of the impending danger, and did not in any manner attempt to stop or check the speed of the train when he saw decedent driving to and on the crossing, and that the engineer, seeing and fully comprehending decedent's perilous position, purposely, wilfully and without regard to the rights of the decedent, caused the locomotive, moving at a speed exceeding 60 miles per hour, to run upon and strike the buggy in which decedent was then riding, throwing him to the ground with great violence and killing him. The necessary effect of running such a ponderous instrumentality as a train of cars, moving at the rate of 60 miles per hour, into a buggy on a crossing, is the death or serious injury of the occupants of such buggy. It is therefore a necessary inference that if the engineer purposely and wilfully caused such train, moving as aforesaid, to collide with the buggy, having full knowledge that the decedent was seated therein, he intended the death or serious injury of decedent. Under the more recent decisions, the paragraph is therefore sufficient. *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99; *Kahle* v. *Crown Oil Co.* (1913), 180 Ind. 131, 100 N. E. 681; *Vandalia R. Co.* v. *Clem* (1911), 49 Ind. App. 94, 96 N. E. 789.

It is argued that on the first appeal of this case, the Supreme Court held this paragraph of complaint sufficient. In that appeal, error was assigned on the overruling of a demurrer to the paragraph. On that subject the court said: "The fifth paragraph of complaint purports to allege that decedent's death was intentionally caused by appellant's engineer. No objection to the sufficiency of this paragraph has been pointed out in appellant's brief, and the alleged error in overruling its demurrer thereto must be regarded as waived." *Cleveland, etc., R. Co.* v. *Starks, supra.* It thus appears that on such appeal,

the court did not determine the sufficiency of such paragraph, except as effect was given to such waiver. However, the case having been reversed, and a new trial ordered and had, and the question of the sufficiency of the paragraph not having been resubmitted to the trial court in any manner, such waiver extends to this appeal. See the following: *Ohio Valley Trust Co.* v. *Wernke* (1913), 179 Ind. 49, 99 N. E. 734; *Chicago, etc., R. Co.* v. *Dinius* (1913), 180 Ind. 596, 103 N. E. 652; *Stevens* v. *Templeton* (1910), 174 Ind. 129, 91 N. E. 563; *Wine* v. *Woods* (1902), 158 Ind. 388, 63 N. E. 759; *Davis* v. *Krug* (1884), 95 Ind. 1; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438, 467, 78 N. E. 1033; *Adams* v. *Board, etc.* (1905), 165 Ind. 530, 76 N. E. 113; *Consumers Paper Co.* v. *Eyer* (1903), 160 Ind. 424, 66 N. E. 994.

Complaint is made of the court's refusal to give certain instructions requested by appellant, among them, Nos. 6 and 14. No. 6 is an abstract instruction to the effect that if a traveler on a highway approaching a railroad crossing, seated in a buggy, obstructs his view by side curtains and a storm front on the buggy, so that he does not see the approaching train in time to avoid injury, and that if he had not so obstructed his view he could have seen such train in time to have avoided injury, such traveler as a matter of law is guilty of negligence contributing to his injury. Practically the only distinction between instruction No. 14 requested and refused, and instruction No. 6 is that the former is concretely applied to decedent, and embraces also the element of obstruction to the sound of the approaching train, resulting from such front and side curtains. The substance of these instructions so refused is included in instruction No. 13 given at appellant's request, which instruction, in the judgment of this court, was more favorable to appellant than it was entitled to be. Under such instructions, a conclusion of contributory negligence as matter of law would flow from the mere fact of such enclosure and its assumed

effects, regardless of the nature of the crossing, the manner in which the train was operated, or the degree of care exercised by the traveler, under investigation. It can scarcely be said that the mere act of so enclosing himself is of itself either wrongful, unlawful or negligent on the part of such traveler. If he so encloses himself, he must, of course, exercise care commensurate with the situation in which he finds himself and created in part by him. If this he does, he is not guilty of contributory negligence, either as matter of fact or matter of law. In such a situation, as in other cases, if the evidence bearing on the issue of contributory negligence is of such a nature, by reason of contradictions or otherwise, as that it is reasonably susceptible of either of two opposite inferences, the one in harmony with the exercise of due care, and the other opposed thereto, the question is for the jury.

The case of *Cleveland, etc., R. Co.* v. *Pace* (1913), 179 Ind. 415, 101 N. E. 479, is not an authority for such an instruction. The Supreme Court there does not hold as matter of law that Pace was guilty of contributory negligence by reason of enclosing himself in a vehicle with the resulting effect as found by the jury, but rather that his failure to exercise care, as called for by the situation for which he was in part responsible, convicted him of contributory negligence. The facts constituting the care actually exercised by Pace were specifically found, and the court held as matter of law that in the absence of certain precautions, the nonexistence of which was found by the jury, he was guilty of contributory negligence. In all similar cases, examined by us where a traveler has been declared guilty of contributory negligence as matter of law, the decisions are based on the absence of care commensurate with the situation as shown by the evidence or found by the jury. See *Terre Haute, etc., R. Co.* v. *Clark, supra; Aurelius* v. *Lake Erie, etc., R. Co.* (1898), 19 Ind. App. 584, 49 N. E. 857; *Cleveland, etc., R. Co.* v. *Houghland* (1909), 44 Ind.

App. 74, 85 N. E. 369, 88 N. E. 623; *Stackus* v. *New York, etc., R. Co.* (1880), 79 N. Y. 464; *Blauvelt* v. *Erie, etc., R. Co.* (1911), 81 N. J. L. 142, 78 Atl. 1048; *Brickell* v. *New York, etc., R. Co.* (1890), 120 N. Y. 290, 24 N. E. 449, 17 Am. St. 648; *New York, etc., R. Co.* v. *Kellam* (1887), 83 Va. 851, 3 S. E. 703; *Work* v. *Chicago, etc., R. Co.* (1901), 105 Fed. 874, 45 C. C. A. 101; *Swanger* v. *Chicago, etc., R. Co.* (1906), 132 Iowa 32, 109 N. W. 308; *Allen* v. *New York, etc., R. Co.* (1895), 92 Hun 589, 36 N. Y. Supp. 624; 33 Cyc. 1026.

It is urged that the court erred in refusing certain other instructions, and in giving certain instructions on its own motion. We do not believe that we would be justified in considering these instructions in detail. We have examined them carefully, and find no prejudicial error in the instructions given or in the refusal of the instructions requested. The jury was instructed fully and with exceptional care.

Under the assignment in the motion for a new trial, that the evidence is insufficient to sustain the verdict, we are required to consider the evidence, its relation to the issue of wilfulness, as formed on the fifth paragraph

5. of complaint, and to the issues of negligence and contributory negligence as formed on the other paragraphs of complaint. To sustain the charge of wilfulness, it must appear from the evidence that "the death in question was intentional. It must be made to appear that the act or omission which caused the death was wilful or intentional, and of such a character as that such death must reasonably have been anticipated as the natural and probable consequence of the act; that is, that decedent was in a position of imminent peril and unconscious thereof, or unable to extricate himself therefrom, and that the engineer in charge of the train had knowledge of such facts, and power and opportunity to stop the train or avoid the collision, but intentionally omitted to do so, and with such knowledge,

power and opportunity wilfully ran such train over the crossing in utter disregard of the consequences." *Cleveland, etc., R. Co.* v. *Starks, supra.* The burden rested on appellee to prove the charge of wilfulness as alleged.

Appellee offered evidence tending to prove that appellant's train was running at a high and dangerous rate of speed through the town of Batesville, and that the statutory signals were not given. This was negligence, but was not wilfulness. The engineer was a witness at the trial. He was the only person who saw the accident. He testified that he had been in the employ of appellant as an engineer for more than 35 years on its Cincinnati and Indianapolis division; that he had charge of the locomotive which struck and killed the decedent; that as he approached Mulberry Street in the town of Batesville, and while about 500 or 600 feet east of the street, he observed a vehicle 30 or 40 feet north of the track, being driven southward; that the horse was being driven very slowly, possibly three miles an hour; that he did not see the driver in the vehicle, which had curtains all around; that from the time he saw the vehicle, he kept the same in view. Believing that the driver would stop, he did not sound the danger signal or slacken the speed of his train until he was 150 or 200 feet away from the crossing, when he saw that the driver was not aware of his danger, and that a collision was imminent. He immediately shut off the throttle, sounded the danger signal, and put on the emergency brake, which is an air brake, and the most powerful used on locomotive engines. He did nothing else, and there was nothing else he could do. This evidence was uncontradicted. While it may be sufficient to disclose an error of judgment on the part of appellant's engineer, it does not show wilfulness, as the term is understood in law. The evidence is, therefore, not sufficient to sustain the charge of a wilful injury or killing; as made by the fifth paragraph of complaint.

Appellant does not contend that the evidence is insuffi-

cient to sustain the verdict on the assumption that it was returned on the theory of negligence, as charged in 6. the second, third or fourth paragraphs of complaint and in so far as concerns such issue, and we therefore pass to. a consideration of the evidence in its relation to the issue of contributory negligence. On this issue, the burden of proof was on appellant. In the matter now under consideration, four questions have been suggested for our consideration: (1) Was it shown, as an uncontroverted fact, that the buggy in which decedent was riding was equipped with a storm front, with side curtains down? (2) Should any weight be given to the testimony of Mary A. Starks on this question? (3) On the issue of contributory negligence, is the case governed by *Cleveland, etc., R. Co. v. Pace, supra?* (4) Must it be held, as matter of law, that the decedent was guilty of contributory negligence?

We shall consider the first and second questions together, and first, Was the buggy enclosed by curtains at the time of the collision? It is not controverted that the engineer in charge of the train that collided with the buggy in which the decedent was riding, testified in behalf of appellant to the effect that a storm front and side curtains completely enclosed the buggy. Appellant contends that this witness was corroborated by the witness, Anna Dallman, who testified in her direct examination that she observed the buggy as it approached the crossing, and at a point near thereto, and that there was a storm front and side curtains on it. Whatever force might otherwise be properly assigned to this evidence was practically destroyed on the cross-examination of the witness, whereon she testified that she was not positive whether the side curtains were fastened on the side of the buggy, or whether the storm front met the side curtains. The testimony of the witness, Mary A. Starks, in behalf of appellee, on the subject under consideration. is as follows: "Q. What kind of a rig did he have on the morning that he started and left home on that day? A. He had a buggy.

Q. What kind of a buggy? A. A top buggy. Q. And what, if anything, in the way of a storm front did he have? A. Well, he had a storm front on. Q. Now, how was that storm front fastened when he left home? A. Well, it was fastened up in front, opened on each side. Q. How were the sides fastened? A. They were not fastened. We never had them fastened. Q. Tell the jury why he never had them fastened. A. Well, simply because getting in and out of the buggy so much we never fastened them. Q. How were they fastened—describe to the jury if they were not fastened to the side bows to keep the storm out—tell the jury how they were fastened? A. Well, they were rolled back—fastened back— There was just the front. Q. Just the front up? A. Yes, just the front up. Q. And what, if anything, was there between the side curtains and the bows of the buggy? A. Nothing at all. Q. Tell the jury what the fact was about that space being open on both sides of the buggy? A. It was. Well, you say they were not fastened on that occasion? A. No, sir, they never was."

There was other evidence to the effect that the decedent lived on a farm about four miles from the town of Batesville; that on the occasion of the trip that terminated in his death, he drove from his home to the town, and thence south along Mulberry Street down to the crossing at which the collision occurred; that the purpose of such trip was to deliver butter and other produce to customers residing in the town. It was a cold February day; it was snowing some, and there was a wind from the northwest. If the buggy was closed, as contended by appellant, that fact must be grouped with any others tending to show that decedent was guilty of contributory negligence. The general verdict being for appellee, includes a finding that appellee's decedent was not guilty of contributory negligence. It follows that to the extent that an enclosed condition of the buggy would tend to establish contributory negligence, the jury, by its

verdict, finds against such condition. As indicated, there was direct evidence that it was completely enclosed at the time of the collision. If the testimony of Mary A. Starks, considered with the attending and surrounding facts and circumstances shown by the evidence, together with all legitimate and reasonable inferences that may be drawn therefrom, amounts to some evidence that the buggy was not enclosed by curtains at the time of the collision, then the most that appellant can claim is that there is a conflict in the evidence on that question. If a conflict, then the general verdict must prevail, in so far as concerns the fact of the condition of the buggy. It may reasonably be gathered from the testimony of Mary A. Starks that when decedent left his home at the beginning of the trip, the buggy in which he was riding was equipped with a storm front and side curtains, and which, with the buggy top, were sufficient to enclose it completely, but that on this occasion, the side curtains of the storm front were rolled back, so that there was nothing closing the space between the side bows of the buggy and the front part of the storm front. Collating the evidence on the two sides of the question, respecting the condition of the buggy, and it is evident that no conflict can be discovered therein, except by inferring that the condition to which Mary A. Starks testified continued to the time of the collision. As to whether the situation presented by the testimony of Mary A. Starks, considered with the surrounding and intervening facts and circumstances, including the element of time, was such as to render legitimate the drawing of an inference that the condition which she testified to did or did not continue, is a question of law for the court. If legitimate to enter the field of inferences at all, then it was within the exclusive province of the jury to determine what inference should be drawn, and this court, in view of the verdict, would be bound to presume here that the jury concluded from a consideration of such evidence and the facts

Cleveland, etc., R. Co. *v.* Starks—58 Ind. App. 341.

and circumstances, that the buggy continued unenclosed, as testified to by Mary A. Starks, and the result would be that there is a conflict in the evidence, as presented to this court on the question under consideration, or that it rejected all evidence on the subject as unsatisfactory, and to the end that the jury believed that the condition of the buggy at the time of the collision is not disclosed by the evidence.

In determining whether the situation was such as to invoke the power of the jury to indulge in inferences, there are a number of facts to consider. Thus, Mary A. Starks testified to the condition of the buggy at one time and place, while the engineer's testimony was directed to a different time and place. A space of about four miles separated the one place from the other, and consequently the one time was materially earlier than the other. The condition to which she testified neither was, nor was intended to be, fixed or stable, nor was it regulated by any unalterable law. There is enough in the evidence to indicate that the curtains not only could be readily opened and closed, but also that they were especially designed with a view to that end. Any such change in their condition depended exclusively on the whim or volition of the person in charge of the buggy. Such whim or volition would doubtless be controlled somewhat by external forces operating on such person, but the same external force might exert a varying influence on different persons or on the same person at different times or under different conditions. The external forces here, as far as shown by the evidence, were the weather conditions, and the fact that the decedent had not yet reached his first customer. The natural effect of such external forces would be in harmony with the probability that the curtains were in a closed condition, as decedent approached the crossing. We concede, however, that if the situation was such as to afford a foundation for inferences, the question of the probable effect of such external forces was for the jury. In the

process of proof by inference, there must first be established a fact or collection of circumstantial facts, bearing some relation to the fact to be proven. The court determines, as matter of law, whether any such relation may probably exist, and the jury then ascertains the relation, if any, by recourse to inferences. If the existence of such relation does not rise above the realm of the merely conjectural or speculative into that of the reasonably probable, indulging in inferences is not permissible, since from such a situation no inference could be drawn. The rule is uniformly recognized that where it is shown that a condition or fact apparently continuous or permanent in nature existed at a particular time, an inference arises that it existed at a subsequent time, within reasonable limits. The rule may otherwise be expressed to the effect that proof of a status or condition at any past time gives rise to a presumption that such status or condition continued thereafter a reasonable time. Jones, Evidence (2d ed.) §58; 2 Wharton, Evidence §1284; 2 Chamberlayne, Mod. Law of Ev. §1030; Bradner, Evidence 438; Gillett, Ind. and Collat. Ev. §71; 16 Cyc. 1052. It is evident that at least two elements must be considered in ascertaining whether, in a given case, there is any such presumption, or may be any such inference, and if so, what force should be given it; (1) the element of intervening time, and (2) the apparent permanent or temporary nature of the condition proven. A clear statement of the rule is as follows: "When the existence of an object, condition, quality, or tendency at a given time is in issue, the *prior existence* of it is in human experience some indication of its probable persistence or continuance at a later period. The degree of probability of this continuance depends on the chances of intervening circumstances having occurred to bring the existence to an end. The possibility of such circumstances will depend almost entirely on the nature of the specific thing whose existence is in issue, and the particular

circumstances affecting it in the case in hand. That a soap-bubble was in existence half-an-hour ago affords no inference at all that it is in existence now; that Mt. Everest was in existence ten years ago is strong evidence that it exists yet; whether the fact of a tree's existence a year ago will indicate its continued existence today will· vary according to the nature of the tree and the conditions of life in the region. So far, then, as the *interval of time* is concerned, no fixed rule can be laid down; the nature of the thing and the circumstances of the particular case must control." 1 Wigmore, Evidence §437. It is frequently said that there is no presumption of the continuance of a given state of things, except where the quality of permanency exists. 2 Best, Evidence §405; 9 Ency. Evidence 907, note; Gillett, Ind. and Collat. Ev. §71; *Croom* v. *Pennington* (1910), 59 Fla. 473, 52 South. 957. Manifestly, however, since there may be all degrees of natural permanency and all degrees of probability that an apparently permanent condition may be submitted to the operation of forces of most any power, the quality of apparent permanence is important only in measuring the time of continuance that may be termed reasonable. Thus, "establishing the existence of a purely transitory state or evanescent fact may fail to furnish to any reasonable mind the basis of an inference that the situation was in the same condition shortly after that time." 2 Chamberlayne, Mod. Law of Ev. §1030. "Situations in which volition enters as an element are more transitory than those that constitute part of the order of nature." 2 Chamberlayne, Mod. Law of Ev. §1033. "So far from continuance being a legal presumption, in things dependent on human purpose, the presumption, in the long run, is the other way. Man never continueth in one stay." 2 Wharton, Evidence §1284.

We have indicated that in order that proof by inference may be permissible, there must appear some relation between the proving or basic fact of the inference and the

fact to be proven, which relation must be to the effect that one being true the other also is true in some degree of certainty. We now address ourselves to the question of what degree of certainty is required, respecting such relation, in order that such process of proof may be deemed legitimate in a given case. The question of the proving force of the facts to which Mary A. Starks testified, considered with the other facts and circumstances bearing on the same subject, is closely related to the question of the admissibility of her testimony in evidence, there being, however, this distinction: At a trial, evidence is ordinarily offered in fragments. It is seldom that a single item of evidence is sufficient of itself to prove a fact in issue. Such item, however, although of a low degree of potentiality, in and of itself, may gather force from other items of evidence thereafter admitted. Hence the rule of admissibility that if the item of evidence offered tends to prove the fact in issue, although the tendency be slight, it is admissible. *Deal* v. *State* (1895), 140 Ind. 354, 373, 39 N. E. 930. It is admissible if it has relative probative value, or if it is calculated to effect rational persuasion. 1 Wigmore, Evidence §9; or if it points to the desired conclusion as the hypothesis most plausible or the most natural of the various ones that are conceivable, or if the desired conclusion is the natural or plausible one among various conceivable ones. 1 Wigmore, Evidence §32. But the question here is whether the buggy was open or closed at the time of the collision. All the evidence from appellant's standpoint bearing on that question is before this court, and our problem is to ascertain whether or not such evidence offered to show that it was open, rises to that degree of certainty that it may be said that there is some evidence to that effect. It is evident that the rule regulating admissibility in the first instance is of necessity more liberal than the rule that must govern us here.

At the beginning of the inquiry, on proof of the mere

existence of the equipment by which the curtains might have been readily opened or closed, it was known that it was possible for such curtains to be in either of said conditions. At that stage of the investigation, although there was as yet no evidence on the subject, the inquirer might have speculated or conjectured that the curtains at the time of the collision were in this state or that, but it would not have been possible for him to arrive at any higher degree of certainty. It, therefore, follows that unless by recourse to inferences from the basic facts proven, considered with the attending facts and circumstances, a degree of certainty higher than the merely possible, conjectural or speculative may be attained, such basic facts have no potency, and the process by inference is not legitimate. In order that a certain hypothesis may be probable, it must rise to a higher degree of certainty than any other hypothesis respecting the same subject-matter. If less certain or only equally certain with such other, it is merely possible, rather than probable. Therefore, in the question under consideration, unless by indulging in inferences respecting the condition of said buggy at the time of said collision probability may be attained, the situation does not authorize proof by inferences. See the following: *Metzger* v. *Schultz* (1896), 16 Ind. App. 454, 462, 43 N. E. 886, 45 N. E. 619, 59 Am. St. 323; *Baltimore, etc., R. Co.* v. *State* (1889), 71 Md. 590, 18 Atl. 969; *Brown* v. *Schock* (1875), 77 Pa. St. 471; *Levison* v. *State* (1875), 54 Ala. 520, 528; *Stevenson* v. *Stewart* (1849), 11 Pa. St. 307; *Stewart* v. *People* (1871), 23 Mich. 63, 75, 9 Am. Rep. 78; *Home Ins. Co.* v. *Weide* (1870), 11 Wall. 438, 20 L. Ed. 197; *State* v. *Watkins* (1832), 9 Conn. *47, 21 Am. Dec. 712.

Treating the said evidentiary facts to which Mary A. Starks testified, together with the other facts of weather conditions, etc., as a source, we do not believe that,

6. through inferences, a conclusion of probability can be drawn respecting the condition of said buggy at

the time of the collision. Considering the nature and purpose of the equipment, subject as it was to every changing impulse of the person in charge, one may speculate as to its condition after a considerable interval from the time of a proven condition, but can attain no higher degree of certainty. We are forced to the conclusion that there is no evidence that the buggy was open at the time of the collision. In addition to authorities cited above, see the following: *Berrenberg* v. *City of Boston* (1884), 137 Mass. 231, 50 Am. Rep. 296; *Frazier* v. *Lynch* (1893), 97 Cal. 370, 32 Pac. 319; *Martyn* v. *Curtis* (1894), 67 Vt. 263, 31 Atl. 296; *Langworthy* v. *Green Tp.* (1891), 88 Mich. 207, 50 N. W. 130.

But it is called to our attention that Mary A. Starks testified that on account of the inconvenience in getting into and out of the buggy that would otherwise be occasioned, such curtains were never fastened. From this evidence it is argued that it may be inferred that the sides of the buggy were unenclosed at the time of the collision. It is apparent from the evidence that the side curtains were arranged so that they could be opened and closed at will, and that they could be fastened in either of said positions. Assuming for purposes of the discussion, but not so deciding, that proof of a personal custom or habit to maintain the curtains in a certain position would be evidence of their position at a particular time, yet there are other difficulties. Thus, it will be observed that the witness did not say that the curtains were always open or that they were never closed, but rather that they were never fastened. The language used by the witness is in harmony with either of two hypotheses: (1) That even if the curtains were closed, they were not fastened in such position, but rather were left to hang or stand loose, that they might be readily displaced in the act of getting into or out of the buggy. (2) That by the word "fastened" the witness meant closed. In one answer, how-

ever, she spoke of the curtains as fastened, when they were opened, in that she said "they were rolled back—fastened back." In order to sustain appellee's contention, it is necessary to infer that by the term "fastened" the witness meant closed, and on such inference build a further one that the curtains were closed at the time of the collision.

10. In the process of proof by inference, the rules of evidence require that the basic fact be proven, or that it be known to exist, rather than that it be inferred, or, as sometimes loosely expressed, "to base an inference on an inference is not permissible". Stated rather more accurately, the rule is to the effect that while the inferred fact may become the basis of another inferred fact, yet in the beginning of the line of inferences, there must be found a proven or known fact. The proposed line here begins with an inference. *Evansville Metal Bed Co.* v. *Loge* (1908), 42 Ind. App. 461, 468, 85 N. E. 979; *Hinshaw* v. *State* (1897), 147 Ind. 334, 363, 47 N. E. 157; 1 Wigmore, Evidence §41; 2 Wharton, Evidence §1226, note.

We have thus determined that if there was evidence necessarily credible that the said buggy was completely enclosed at the time of the collision, the fact of such condi-

6. tion is uncontroverted. To determine whether there was such necessarily credible evidence, requires a consideration of the testimony of the engineer, who testified positively that the buggy, which appeared to him to be a small express wagon, was so completely enclosed. The jury is the judge not only of the weight of the evidence, but also of the credibility of the witnesses. As the former rests upon the latter, in so far as it concerns oral testimony, it follows that the evidence can not be intelligently weighed unless the credibility of the witness has first been determined. In fact, the evidence in a case, aside from the written or documentary, is gathered only from the credible oral testimony. When a material fact is supported only by the

uncorroborated testimony of a single witness, there is no reason why the jury should not subject the credibility of such witness to proper tests, even though his testimony is not contradicted by that of any other witness. If, as a result of such tests, honestly and fairly applied, the jurors are unable to believe the testimony of such witness, it is not only within their power, but also it is their duty, to reject it. In so doing, a jury may believe that the witness was mistaken, rather than that he purposely testified falsely: Thus, the jury may believe that such a witness was situated so that he could not have accurate knowledge of the matter about which he testifies, and that, as a consequence, reliance can not be placed on his testimony, as tending to establish either side of the proposition involved. In measuring credibility, all the elements of tests to be applied, including means of knowledge, manner of testifying, reasonableness of the matter testified to, etc., are primarily for the jury. Here, the engineer's opportunity of observing the buggy was confined to the brief interval of time after the engine rounded the curve near the crossing. The train was moving at a rapid rate of speed. The engineer's view was obstructed, as shown by the evidence. His attention was directed in part to an effort to control his train. Under such circumstances, this court can not say that the jury was bound to accept his testimony as true. Primarily, his credibility was for the jury, secondarily for the trial court. To the extent that his testimony is out of harmony with the general verdict, we must presume that the jury, in the exercise of its prerogative, rejected it. It follows that we must say that the jury was authorized to find that there was not any credible evidence respecting the condition of the buggy at the time of the collision. We would not be understood as holding that a jury under any circumstances has a right arbitrarily to reject the testimony of the witnesses. See generally: Cotner v. State (1909), 173 Ind. 168, 170, 89 N.

E. 847; *Jenney Electric Co.* v. *Branham* (1896), 145 Ind. 314, 322, 41 N. E. 448, 33 L. R. A. 395; *Oliver* v. *Pate* (1873), 43 Ind. 132, 136; *Cincinnati, etc., R. Co.* v. *Cregor,* (1898), 150 Ind. 625, 627, 50 N. E. 760; *Hartford Life, etc., Ins. Co.* v. *Gray* (1875), 80 Ill. 28; *Cleveland, etc., R. Co.* v. *Quinn* (1913), 54 Ind. App. 11, 101 N. E. 406; 1 Thompson, Trials §§1036, 1037; *Devine* v. *Murphy* (1897), 168 Mass. 249, 46 N. E. 1066; *Lindenbaum* v. *New York, etc., R. Co.* (1908), 197 Mass. 314, 84 N. E. 129; *Lautner* v. *Kann* (1898), 184 Pa. St. 334, 39 Atl. 55; 6 Ency. Pl. and Pr. 694.

Having determined, as indicated, that there was no evidence that said buggy was open at the time of the collision, and no testimony necessarily arising to the dignity of evidence, or necessarily binding on the jury that it was closed, we shall in consideration of the verdict, treat the condition of the buggy as an unascertained fact, and proceed to the third question, as to whether or not the Pace case, *supra,* is controlling here. One very important distinction 4. between that case and the case at bar is that in the former the essential facts were found by the jury in its answers to interrogatories returned with the general verdict, while in the latter only a general verdict was returned. In the Pace case, the jury in answer to interrogatories found that Pace had enclosed himself in a buggy, and that such fact together with certain obstructions on the east side of the street prevented him from hearing the whistle of the locomotive—and that the fact of such enclosure alone prevented him from hearing certain persons who called to him in warning, and from seeing the approaching train, after he had passed beyond the obstructions. The jury found specifically on the subject of the care exercised by Pace, among other things that he did not take certain precautions for his own safety. The Supreme Court held as matter of law that Pace was guilty of contributory negligence under

the special circumstances of the case, because he did not take such precautions. As we shall later show, it is not held in the Pace case that the mere fact that Pace enclosed himself as found by the jury convicted him of contributory negligence. It is, therefore, evident that the Pace case is not controlling here.

We proceed to consider the fourth question as to whether the decedent, under the evidence, must be held, as matter of law, to have been guilty of negligence contributing to his death. This question must be determined by this court from a consideration of the evidence, unaided by inferences or presumptions, except such as flow from the evidence. The general verdict being for appellee includes a finding that the decedent was not guilty of contributory negligence, and as a consequence, such inferences as the jury may have reasonably indulged from the evidence in support of the general verdict will be considered here, while as against such general verdict, this court will indulge only such inferences or presumptions, if any, as necessarily are gathered from the evidence. *Evansville, etc., R. Co.* v. *Berndt* (1909), 172 Ind. 697, 88 N. E. 612; *Cleveland, etc., R. Co.* v. *Champe* (1913), 55 Ind. App. 243, 102 N. E. 868; *City of Indianapolis* v. *Keeley* (1906), 167 Ind. 516, 525, 79 N. E. 499; *Pittsburgh, etc., R. Co.* v. *Bennett* (1893), 9 Ind. App. 92, 106, 35 N. E. 1033. The burden of proof being on appellant, it follows that in the absence of any evidence bearing on such issue, the appellant must fail. *Evansville, etc., R. Co.* v. *Berndt, supra.*

Either the presence or the absence of contributory negligence may be shown, by either direct or circumstantial evidence, or both, aided by inferences drawn from facts and circumstances proven under the principles above laid down. Briefly we sum up the evidence bearing on this issue. Decedent's rig was seen to turn from Pearl Street south on Mulberry Street about one block from the

crossing, moving in a slow trot. The engineer saw the rig when about 30 or 40 feet from the track, its speed being about three miles per hour. Another witness saw the buggy as it entered on the crossing just before the collision. As we have indicated, the jury was warranted in finding that the condition of the buggy, as to being open or closed, was not shown by the evidence. There was no evidence on the subject of whether or not decedent looked or listened for the approach of the train, or whether at any point he stopped the rig, except that the engineer testified that the buggy did not stop after he first saw it. East of Mulberry Street, 150 or 200 feet, or probably at a greater distance, the railroad track curves to the south, the curve being to the extent that a tangent drawn to the track at the old depot about a quarter of a mile east of Mulberry Street would intersect said street about 80 feet north of the railroad. Commencing near Mulberry Street, and extending east, the track passes through a cut, which, at its deepest point about 300 feet east of Mulberry Street is five feet deep at the south rail, and not so deep at the north rail. From a point about 80 feet to a point about 20 feet north of the crossing along the east side of Mulberry Street there were dwellings, trees, bushes, weeds and fences. There was at least one box car—perhaps more—standing on the south side of the track on a siding in the vicinity of the curve. Extending east of Mulberry Street along the north side of the right of way, there were bushes, weeds, poles, and further east, buildings. Commencing perhaps 300 or 400 feet east of Mulberry Street, and extending east several blocks, there were factories scattered along on either side of the right of way, which factories were in operation, and the noise of which could be heard at Mulberry Street. From one of these factories, steam was escaping across the track, making a cloud of steam ten to fifteen feet high. There was conflict in the evidence respecting the nature of the obstructions above de-

scribed, and the extent to which the sight and sound of an approaching train were thereby obstructed. There was evidence that certain objects along the east side of Mulberry Street constituted almost a total obstruction to the view eastward up the track, until the traveler reached a point about twenty feet north of the track, and that thence to the track the standing car or cars obstructed the view. There was other evidence that said obstruction was but partial and that there were points north of the crossing and within said 80-foot limit where the view was open. There was evidence that from a point on or within six or eight feet of the track the view up the track was limited to 150 or 200 feet, on account of the curve. There were about eight street crossings in Batesville, east of the Mulberry Street crossing where the collision occurred, being on an average of 300 feet apart. The grade of the track descends to the west. Witnesses estimated the speed of the train at from 45 to 80 miles per hour. There was some conflict in the evidence as to whether or not the whistle was sounded as the train approached and passed through Batesville, except the danger signal, immediately prior to the collision, and a like conflict as to whether or not the engine bell was ringing. The engineer testified that he sounded the whistle one long blast in the vicinity of the tower, which was about one mile east of the depot, and that he sounded four blasts about 80 rods east of the old depot, and that he gave no other signals, except the danger signal immediately before the collision. The old depot is several blocks east of the point of the collision. At the time of the collision, there was a stiff breeze from the northwest, and it was a cold, damp, cloudy morning; the ground was frozen, and it was snowing some.

Ordinarily, where a traveler upon a public highway is injured or killed at a railroad crossing, by a collision with a train, proof that he did not look or listen for the approach of a train is sufficient to convict him of contributory negligence. Under exceptional circum-

stances, proof that he did not stop before driving upon the track might be sufficient to that end, as indicated in the Pace case, *supra*. Here the engineer testified that appellee's decedent did not stop within the said space of 30 or 40 feet from the track. Such fact, if found by the jury to be true, was not sufficient of itself, as matter of law to sustain the charge of contributory negligence against said decedent, under the circumstances presented here, but rather was merely matter for the consideration of the jury on said issue. *Malott* v. *Hawkins* (1902), 159 Ind. 127, 134, 63 N. E. 308. The situation then is as follows: There was

14. some direct evidence that decedent did not stop within the limits named, but no direct evidence that he did or did not stop at any other point, or that he did or did not look and listen or use other precautions to detect the approach of the train. The absence of direct evidence, as indicated, may be remedied, however, by inferences drawn from facts and circumstances proven. But since the general verdict, based as it is on conflicting evidence, respecting the physical surroundings, includes a finding for appellee on the issue of contributory negligence, it follows that as against such element of the general verdict, this court can consider, as tending to establish contributory neg-

15. ligence, only inferences necessarily drawn from the evidence. In thus proceeding by inferences, the law will assume that decedent "actually saw what he could have seen, had he looked, and heard what he could have heard, had he listened". Otherwise, more aptly stated, as applicable here, when a traveler upon a public highway approaches a railroad intersecting such highway, at grade, under such circumstances as that by the exercise of reasonable care and diligence he could have seen and heard the approach of a train in time to have avoided a collision therewith, by the exercise of due care, and consequent injury or death, and where he is injured or killed by such collision, the law will

presume either that he did not look and listen for the approach of such train, or that he did not heed what he saw and heard. *Grand Trunk, etc., R. Co.* v. *Reynolds* (1911), 175 Ind. 161, 175, 92 N. E. 733, 93 N. E. 850; *Malott* v. *Hawkins, supra; Smith* v. *Wabash R. Co.* (1895), 141 Ind. 92, 99, 40 N. E. 270.

Ordinarily, it is a question for the jury as to whether such a traveler, by the exercise of reasonable care could have seen or heard the approach of the train as aforesaid. Here, by the general verdict, the jury determined such question in favor of appellee. It is not within the province of this court, under the rules above laid down, to interfere with such finding, unless there is a necessary inference from facts and circumstances proven that said decedent could have detected the approach of such train as aforesaid, by the exercise of due care, as aforesaid. Considering all the facts and circumstances of such transaction, including the physical surroundings, as shown, we do not believe that there is any such necessary inference. It follows that the evidence does not show, as matter of law, a failure by decedent to look or listen or exercise other precautions to ascertain the approach of such train, and that the question of contributory negligence was for the jury. The jury having determined such question in favor of appellee, by its general verdict, it is not within the power of this court to interfere. Here decedent approached a crossing, where the obstructions to the exercise of the senses of sight and hearing were at least as serious as those in *Cleveland, etc., R. Co.* v. *Pace, supra,* in which case the Supreme Court said: "Upon the question of the obstructions of the freight cars and elevator alone, to hearing and seeing, reasonable men might differ, as to whether the failure to see or hear was negligence on the part of the decedent, or whether he used due care" evidently meaning thereby that had it not been for the fact that Pace having voluntarily enclosed himself in a buggy,

with the consequent interference to sight and sound, as specifically found by the jury, failed to stop before entering upon the track, the question of contributory negligence would have been for the jury.　See, also, *Grand Trunk, etc., R. Co.* v. *Reynolds, supra; New York, etc., R. Co.* v. *Robbins* (1906), 38 Ind. App. 172, 76 N. E. 804; *Louisville, etc., R. Co.* v. *Williams* (1898), 20 Ind. App. 576, 51 N. E. 128; *Indiana Union Traction Co.* v. *Myers* (1911), 47 Ind. App. 646, 93 N. E. 888; *Vandalia R. Co.* v. *Baker* (1912), 50 Ind. App. 184, 97 N. E. 16; *Toledo, etc., R. Co.* v. *Lander* (1911), 48 Ind. App. 56, 95 N. E. 319; *Lake Shore, etc., R. Co.* v. *Myers* (1912), 52 Ind. App. 59, 98 N. E. 654, 100 N. E. 313; *Crane* v. *Michigan Cent. R. Co.* (1895), 107 Mich. 511, 65 N. W. 527; *Newtrom* v. *St. Paul, etc., R. Co.* (1895), 61 Minn. 78, 63 N. W. 253; *Hendrickson* v. *Great Northern R. Co.* (1892), 49 Minn. 245, 51 N. W. 1044, 32 Am. St. 540, 16 L. R. A. 261, note; *Choctaw, etc., R. Co.* v. *Baskins* (1906), 78 Ark. 355, 93 S. W. 757; *Chicago, etc., R. Co.* v. *Hines* (1896), 56 Kan. 758, 44 Pac. 993; *Baltimore, etc., R. Co.* v. *Landregan* (1903), 191 U. S. 461, 24 Sup. Ct. 137, 48 L. Ed. 262; *Gulf, etc., R. Co.* v. *Shieder* (1895), 88 Tex. 152, 30 S. W. 902, 28 L. R. A. 538; *Hemingway* v. *Illinois Cent. R. Co.* (1902), 114 Fed. 843, 52 C. C. A. 477; *Adams* v. *Bunker Hill, etc., Co.* (1906), 11 L. R. A. (N. S.) 844, note; *Hanna* v. *Philadelphia, etc., R. Co.* (1906), 4 L. R. A. (N. S.) 344, note.

Several of the decisions above cited proceed upon the theory of a presumption of due care, based on the instinct of self preservation.　As we have indicated, no such presumption is indulged by the courts of this State.

However, such fact does not weaken such cases as authorities here.　*Evansville, etc., R. Co.* v. *Berndt, supra.*

A number of questions are presented respecting the ad-

mitting and excluding of testimony, all of which we have carefully considered, but find therein no prejudicial error.
The judgment is affirmed.

NOTE.—Reported in 106 N. E. 646. As to duty of traveler on highways to use his senses of sight, hearing, etc., to avoid danger at crossings, see 90 Am. Dec. 780. As to whether wantonness or wilfulness, precluding the defense of contributory negligence, may be predicated on the omission of a duty before discovery of a person in position of peril at railroad crossing, see 21 L. R. A. (N. S.) 432, 440. See, also, under (1) 33 Cyc. 1053, 1057; (2) 33 Cyc. 1053; (3) 3 Cyc. 398; (4) 33 Cyc. 1111, 1131; (5) 33 Cyc. 1066, 1087; (6) 3 Cyc. 313; (7) 38 Cyc. 1514, 1517; (8) 17 Cyc. 820; (9) 16 Cyc. 1052; (11) 16 Cyc. 1051; (12) 33 Cyc. 1143; 3 Cyc. 313; (13) 29 Cyc. 626; (14) 33 Cyc. 1118, 1116; (15) 33 Cyc. 1116; (16) 33 Cyc. 1072; (17) 29 Cyc. 596; 33 Cyc. 1070.